## PATTON v. FEDERAL SECURITY AGENCY, SOCIAL SECURITY BOARD.

### Civil Action No. 5258.

District Court, E. D. New York.
Dec. 24, 1946.

J. Vincent Keogh, U. S. Atty., of Brooklyn, N. Y. (Jesse G. Silverman, Asst. U. S. Atty., of St. George, S. I., N. Y., John F. Sonnett, Asst. Atty. Gen., J. Francis Hayden, Sp. Asst. to Atty. Gen., and Cecelia H. Goetz, Atty., Dept. of Justice, of Washington, D. C., of counsel), for the motion.

George E. Patton, in person (opposed).

BYERS, District Judge.

The defendants' motion for summary judgment presents an interesting and difficult question under the Social Security Act, 42 U.S.C.A. § 301 et seq., of whether sums paid to plaintiff by his employer for his subsistence and maintenance while engaged upon the latter's business, at places remote from his home, are to be treated as wages for the purposes of the Act.

There are no contested questions of fact, and decision is required concerning the legality of the defendants' conclusion that such payments were to be regarded and treated as an "allowance or reimbursement for * * * expenses incurred in the business of the employer" and therefore not wages.

This conclusion is based upon the report of the Board's Referee, which took into account the facts presented by the employee and the employer according to testimony taken at first and second hearings; the latter was ordered by the Appeals Council which reconsidered its first action, and granted relief to the plaintiff as to the item of lunch money paid when the plaintiff was attached to and working from the home office of his employer, but at places somewhat removed therefrom.

The defendants argue that the conclusion is a mixed question of law and fact, and in the latter aspect is not open to judicial review since the record reveals evidence to sustain the decision.

As to so much of the case, the statute itself, 42 U.S.C.A. § 405(g), and the cases completely sustain the defendants' argument: Walker v. Altmeyer et al., 2 Cir., 137 F.2d 531; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Thompson v. Social Security Board, App.D.C., 154 F.2d 204. As stated above, however, there

is no present contention by the plaintiff (he appears pro se and has filed no brief) to the effect that the facts as already found should be reconsidered; he assumes them to have been established, but he argues that the law and regulations have been incorrectly interpreted against him.

In passing upon the status of newsboys the National Labor Relations Board had held them to be employees, subject to the Labor Act, 29 U.S.C.A. § 151 et seq. The Supreme Court used this expression when the case came before it, National Labor Relations Board v. Hearst Publications, Inc., 322 U.S. 111, 64 S.Ct. 851, 860, 88 L.Ed. 1170:

"Undoubtedly questions of statutory interpretation, especially when arising in the first instance in judicial proceedings, are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute." (Citing cases)

This cause was brought under the Social Security Act (42 U.S.C.A. § 405(g)), to obtain a review of a decision of the Social Security Board refusing to revise the plaintiff's wage record from January 1, 1938, to March 8, 1942, so as to include therein amounts paid to him by his employer for living expenses while absent from New York City on his employer's business.

The plaintiff during the period in question was employed by Pinkerton National Detective Agency, Inc., as a special operative in attendance at race tracks, and the items now in dispute have to do with his employment at Saratoga, N. Y., where he was paid $3.00 per day and $1.50 per week for laundry, and at one or more tracks in Florida where he was paid $6.00 per day, in addition to the $5.00 per day which he was paid when working in New York City. As to the latter, when in attendance he was also paid fifty cents a day for lunch money when assigned to the Belmont, Jamaica, Aqueduct and Yonkers tracks.

The original action of the Appeals Council upheld the Referee in excluding all such items from plaintiff's wages, but reconsideration caused the decision to be changed as to the lunch money items,

which were added to his wage record, namely:

1939 ......... $69.00 (138 days)
1940 ......... $73.00 (146 days)
1941 ......... $70.59 (141 days)

The statutory definition of "wages" is found in 42 U.S.C.A. § 409(a):

"(a) The term 'wages' means all remuneration for employment, including the cash value of all remuneration paid in any medium other than cash; except * * *." (Exceptions not relevant)

Section 405(c) provides for the establishment, maintenance and authorized corrections by the Social Security Board, of wage records.

The regulations involved seem to be the following:

Social Security Board Regulation No. 2, Title 20, C.F.R. Part 402, Section 15, provides in part as follows:

"*Traveling and other expenses.* Amounts paid to traveling salesmen or other employees as allowance or reimbursement for traveling or other expenses incurred in the business of the employer constitute wages only to the extent of the excess of such amounts over such expenses actually incurred and accounted for by the employee."

Social Security Board Regulation No. 3, Title 20, C.F.R. (1940 Supp.) Part 403, Section 828(e) (4), provides in part as follows:

"Ordinarily, amounts paid to traveling salesmen or other employees as allowance or reimbursement for traveling or other expenses incurred in the business of the employer are excluded from wages only to the extent actually incurred and accounted for by the employee *to the employer.*" (Emphasis supplied)

The defendants' brief comments upon the foregoing as follows:

"The Regulations of the Social Security Board show that it has at all times refused to treat as wages any part of a travel allowance used to meet actual expenses but it has equally consistently regarded any amount over and above such expenses as part of the worker's compensation. The Board has, however, shifted its position

on the significance of an accounting by the employee to the employer of the actual expenses incurred. Under the Regulation in force up to 1940 where the employee did not actually account for his expenses to the employer it was presumed that the entire amount given him as an allowance for traveling expenses was needed to meet such expenses and was to be excluded from wages. Since 1940 the presumption has been reversed. Where an employer claims that money given an employee is an allowance for traveling expenses and not wages, an accounting of actual expenses is, *ordinarily*, required before such allowance can be excluded from wages."

The question is whether the regulations are designed to preserve to the employee his remuneration or to diminish it. If the latter result is accomplished, it would seem that the purpose of the statute is defeated to that extent, because the theory of the Social Security concept is the reflection of the wage earning capacity during the nonproductive years in the payments which then are made in substitution for wages. At least, such is the understanding of the subject upon which this decision will proceed.

It would seem that the regulations are open to the objection that they lose sight of the importance of preserving, to an employee who is required to ply his employer's calling at a remote place, the same earning capacity as he is able to bring to bear for his own benefit and that of his dependents, when performing his tasks at home. In other words, the stress seems to be only upon a possible gain in dollars resulting from saving something from the maintenance allowance, while the factor of preserving a wage-earning capacity, under exceptional conditions, seems not to be recognized.

Just to enable one to hold his own may be a real benefit to him.

If this is thought to be too fine-spun a distinction, it should be remembered that the employer could have set the matter at rest by the simple expedient of saying that the wages would be $5.00 per day plus lunch money at home, and $8.00 per day (plus laundry bill) at Saratoga, and $11.00 per day at Florida tracks. Had that been done, this case would not be in court, and if that is what was actually accomplished in substance, it would seem that the regulations are designed and have been interpreted so as to preserve an artificial distinction, to the detriment of an employee, and thereby to defeat the ultimate purpose of the statute.

The combination of "traveling or other expenses" under one head is believed to promote confusion of thought in this connection.

Railroad fares are transportation costs, and stand in a category of their own. An allowance for subsistence is of a different nature. It is intended, as I have tried to show, to permit a man to live away from his home, without impairment of his wages, and no difference in principle is presently seen between such subsistence in Saratoga, or Florida, and the lunch money paid while the employee was attending race tracks in or near New York City.

For ready reference, the pertinent paragraphs of the Appeals Council supplemental decision will be quoted:

"In view of the provisions contained in the Social Security Board's Regulations. No. 2, Article 15, and Regulations No. 3, Section 403.827(a), it is our opinion that a distinction may properly be made between traveling expenses such as were incurred by the claimant in connection with services which he rendered his employer in Florida and 'lunch money' paid to him by his employer with respect to those days when he rendered services at race tracks in the vicinity of New York City. *When an employee is in travel status away from the headquarters to which he is normally attached, an allowance for or reimbursement of his traveling expenses, including those for transportation, lodging, and meals, does not ordinarily materially reduce his cost of living since the expenses involved in maintaining his home and providing food for his family continue while he is away.* If his occupation is one which requires him, when working at his regular headquarters, to purchase his lunch or any other meal at a restaurant, his expenditures for such meals must be made from his

wages. It follows that if, when an employee is working at his headquarters, his employer, for the latter's convenience, furnishes him the money necessary for purchase of such meals, the employee is relieved thereby of the necessity of making such expenditures from his usual remuneration. Thus an allowance for 'lunch money', under those circumstances, becomes an addition to the employee's regular remuneration and hence constitutes 'wages'.

"In the instant case it appears that the payment of *'lunch money'* to the claimant on those days when he was assigned to work at race tracks in the vicinity of New York City, his headquarters, *was for the convenience of the employer inasmuch as it assured the employer that the claimant, by eating his lunch at a restaurant located on or in the immediate vicinity of the race track, would not lose time from his work* by going some distance from the track to obtain his lunch. In the light of the above considerations, therefore, it is the further finding of the Appeals Council that the above amounts paid the claimant as 'lunch money' constituted 'wages' under the Social Security Act of 1935 and under the Social Security Act Amendments of 1939." (Emphasis supplied)

The passages emphasized seem to point to a similarity rather than a distinction between the subsistence in the form of lunch money for meals at Metropolitan tracks, and the subsistence at Saratoga and in Florida consisting of lodging and meals in those places, and that both were clearly for "the convenience of the employer". The logic which justifies the classification adopted as to the first would equally apply to the second, since the preservation unimpaired of the employee's wages is common to both aspects of the question.

Again, it may be permitted to observe that the payment of transportation expenses should not be allowed to obscure the nature of the payment for subsistence away from home.

The helpful brief of the defendants amply demonstrates that the question under examination presents difficulties from the administrative standpoint, and that only the clearest persuasion, that the plaintiff is in a fair way to be deprived of something that the law gives him, would permit of a present decision in his favor. The points advanced are these:

1. Only the excess of allowance over expenditure can be treated as wages, and no such excess has been proved. If the necessity for accounting on the part of the employee, so as to reveal a possible saving from the subsistence allowance, is a required preliminary step to the determination of the true nature of the allowance, then it follows that the absence of such accounting is fatal to the plaintiff's case. It is not thought that this is the true test, however, if it be granted that the maintenance of the employee's wages by compensating to him the extra burden of away from home living is a benefit, varying only in degree from the result of his saving and adding to his wages the money which he chooses not to expend for such subsistence.

2. It is said that the purpose of the accounting requirement of the regulation is to prevent "evasion of the Act by the payment of wages disguised as an expense account". This is understood to mean that the employer withholds less for Social Security and consequently remits less, where the compensation can be called "expenses" in part, than would be the practice if the entire compensation were classified as "wages". If the quoted observation is understood, it seems that the regulations, as applied to the circumstances in this case, tend to promote the very result sought to be avoided. In other words, if true wages are disguised in part by calling them expenses, whereby less is paid for Social Security than the law intends, the way to prevent that result is to classify transportation separately from provisions for maintenance or subsistence the object of which is to preserve to an employee who is abroad the same wages that he receives when he is at home.

It is impossible to determine from the brief and pleadings whether the proper payments for Social Security can now be exacted from the employer and the employee, if the latter's contentions are to be sustained; that is one aspect of the

public interest in this small controversy, but I should suppose that the employer, by failing to withhold and pay a correct portion of the employee's true wages, could not thereby foreclose the latter's assertion of his legal rights.

Misgivings as to the Court's function in this case have been measurably allayed by decision of the Supreme Court that "back pay" duly awarded to an employee should be treated as wages, in spite of a contrary administrative determination. See Social Security Board v. Nierotko, 327 U. S. 358 at page 369, 66 S.Ct. 637 at page 643: "Congress might have declared that 'back pay' awards under the Labor Act should or should not be treated as wages. Congress might have delegated to the Social Security Board to determine what compensation paid by employers to employees should be treated as wages. Except as such interpretive power may be included in the agencies' administrative functions, Congress did neither. An agency may not finally decide the limits of its statutory power."

In this case, it may be said that Congress has not declared that subsistence should never be treated as a part of wages.

In the belief that this Court would in effect deny to this plaintiff the right of judicial review accorded to him by the governing statute, if the determination of the Board were to be accepted in the face of a belief that it is not in accord with the broad purpose of the law, the defendants' motion for summary judgment must be denied.

■ The regulations which have been quoted are thought to be invalid to the extent that they operate to exclude from "wages" as defined in the Act, that which may be in truth a component thereof; and the final decision of the Appeals Council is thought to reveal the attempt to create a distinction in principle between certain subsistence in or near New York, and subsistence abroad of the same nature, when no such distinction has been shown to exist.

■ The defendants' motion for summary judgment is denied. If one had also been made by the plaintiff, it would have been granted. Under the statute, Section 405(g), the Court is given the power to enter an appropriate judgment; accordingly, a judgment is directed in favor of the plaintiff, reversing the determination of the Board as to 1939 and subsequent years, since the records for 1937 and 1938 cannot be affected by reason of the four-year provision found in paragraph (c) (2) of the section of the statute, 42 U.S.C.A. § 405(c) (2).

Settle order.