## SIPPERLEY v. FEDERAL SECURITY ADM'R.

### Civ. No. 37-735.

District Court, S. D. New York.

April 12, 1948.

Francis C. Dale, of Peekskill, N.Y., for plaintiff.

John F. X. McGohey, U. S. Atty., of New York City (William M. Regan, Asst. U. S. Atty., of New York City, of counsel), for defendant.

BYERS, District Judge.

The plaintiff sues to recover the lump sum payment provided in Section 202(g) of the Social Security Act, 42 U.S.C.A. § 402(g).

She is the widow of Landon A. Sipperley, and pursuant to order of this Court was permitted to conduct this cause in forma pauperis.

The plaintiff's husband died September 18, 1943, and her said claim was made to the Social Security Board and denied, and at her request a hearing was had before a referee in accordance with procedure under the statute, and he decided against her claim on December 3, 1945. Review was denied by the Appeals Council, and this action was brought within the statutory time limit as extended.

There is no dispute that from 1937 and for three-quarters of the year 1943, inclusive, social security taxes on the wages said to have been earned by the decedent were duly paid both by the employer and the employee, according to the following figures:

| "Year | Amount |
|---|---|
| 1937 | $1572.23 |
| 1938 | 1783.40 |
| 1939 | 1830.40* |
| 1940 | 1830.40* |
| 1941 | 1855.40* |
| 1942 | 1884.00* |
| 1943 | |
| First quarter | 486.20* |
| Second quarter | 486.20* |
| Third quarter | 448.80* |
| *Deleted" | |

The deletions above noted signify that the taxes paid upon the said wages are disregarded for present purposes by the defendant because Landon A. Sipperley is said not to have been an employee during the periods so indicated; thus, although the Government has accepted and retained the taxes on the theory that they purchased so-called social security, the obligation to perform the statutory duties is to be avoided upon the ground stated. If this position is sound, the purpose of the statute to ameliorate hardship caused by the death of a bread-winner is being defeated on nonmeritorious grounds.

There is no offer contained in the Answer filed by the Government, to refund the social security taxes which it has so collected.

The reason for the refusal to pay the lump sum benefit is thus stated in the report of the referee:

"Since at least January 1, 1937, the wage earner was the sole administrator of the estate of Calvin E. Sipperley, deceased, the wage earner's father. The wage earner, as well as his two younger brothers, had been employed on a weekly wage basis in his father's plumbing and heating business until the latter's death. The business *was operated by the wage earner, as sole administrator of his father's estate, until the wage earner died.*\* There has been no final accounting in the father's estate nor was the wage earner paid any statutory fees as administrator thereof.

"After the father's death, the three sons, including the wage earner, agreed among themselves that they would continue to operate the business *and that the wage earner would be in charge as administrator.*\* Thereafter, they continued to render the same services as theretofore and continued to receive payments from the estate for such services. Whereas the wage earner had received greater remuneration than the others for his services theretofore, the three sons received equal remuneration starting January 1, 1939. *After the father's death, the wage earner was not supervised or controlled in his work by anyone nor did anyone have the right to do so.*\* "

The power of the Court to review the determination of the Board is thus defined in the statute, 42 U.S.C.A. § 405(g): "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Board, with or without remanding the cause for a rehearing. The findings of the Board as to any fact, if supported by substantial evidence, shall be conclusive, \* \* \*."

The present exercise of the Court's responsibility is the subject of instruction in the following cases: Walker v. Altmeyer, 2 Cir., 137 F.2d 531; United States v. Lalone, 9 Cir., 152 F.2d 43.

The admonitions contained in the opinions in these cases are not thought to restrict the Court to an automatic approval of this decision of the Board, in view of the manifest purpose of Congress that, to some extent at least, the Court should inform itself with respect to the evidence upon which the Board had acted, in order to appraise its substantiality.

The testimony taken by the referee is that of the plaintiff, and of her attorney; the latter had to do only with the non-payment of commissions to the decedent as administrator of his father's estate.

The referee's decision does not disclose the date of the death of the decedent's father, nor the date on which letters of administration were issued to the decedent; nor does it recite whether any special powers were conferred upon the administrator by the Surrogates Court in excess of those ordinarily incident to his office.

A certain confusion seems to have arisen concerning the devolution of the decedent's property, on the one hand, and the business conducted by Landon A. Sipperley and his two brothers, on the other.

In the practical sense, those three men continued their father's business, but that was not the legal situation. When he died, his business stopped and his personal property descended to his widow and next of kin (he had at least four children), although fiduciary title thereto vested in his administrator for the payment of debts and the purposes of distribution; thus the fixtures, accounts receivable, and other items of personal property of Landon's father pertaining to the business came into his custody, and he took title thereto as administrator, but only for the purposes stated.

The conduct of the business, however, was something else. Three men, who happened to be his sons, established a new enterprise, in the legal sense, the precise nature of which does not appear, but it seems to have been joint, and perhaps possessed some attributes of a partnership.

---

\* Note: The matters emphasized are those which are not supported by substantial evidence.

█ If one of those three men could be regarded as the employee of the other two for the purpose of the payment of social security taxes, he did not forfeit that status because he happened to be administrator of the goods, chattels and credits of his deceased father.

The decision of the referee is deficient in that this aspect of the situation seems not to have been considered; in other words, the claim has not been refused on the ground that Landon Sipperley could not be regarded as an employee of whatever commercial enterprise it was that he and his brothers conducted from and after the death of his father, which probably occurred in 1936.

Recognition of the importance of this aspect of the case is to be found in Code of Federal Regulations, Title 20, Chapter III, § 402.3 (touching the administration of the Social Security Law), thus:

"Whether the relationship of employer and employee exists will in doubtful cases be determined upon an examination of the particular facts of each case.

"If the relationship of employer and employee exists, the designation or description of the relationship by the parties as anything other than that of employer and employee is immaterial. *Thus, if such relationship exists, it is of no consequence that the employee is designated as a partner, coadventurer, agent, or independent contractor.* (Italics added)

"The measurement, method, or designation of compensation is also immaterial, if the relationship of employer and employee in fact exists."

The testimony of Mrs. Sipperley at pages 31, 32, 33, 35, 36, 37 and 39 is consistent only with a joint relationship which might or might not have been a partnership, thus:

Page 31: "A. That's what I was going to tell Mr. Lindner. You speak about hiring and giving orders and all. While they worked in partnership, the three carried that out together. I mean, there was the brothers and my husband, too. They would hire if he didn't and they would give orders. They acted as foremen as well."

Page 32, as to hiring: "A. Well, that I don't know because, as I say, the brothers had just as much to do with that as he and I wouldn't know, I mean, in my position, know whether a certain man was hired by Carlton or by Vernon or by Landon. (Carlton and Vernon were Landon's brothers.) That I couldn't say."

Page 33, as to instructions: "A. No. Each one worked on their own. I can say, as far as that goes, if there was an oil burner to fix, my brother-in-law would go out and fix it just the same—just the same as my husband. They all had their business phones and whoever happened to be in there would go and take care of the work or boss the fellow that he was working with."

Page 35, as to estimating: "A. Of figuring estimates and things like that, my husband did that. You see, it's pretty hard to answer to everything because in some cases Carlton would and then in some jobs my husband would if there was definitely figuring on a big job."

Page 36: "A. Or it might happen to be a large job; they would figure—he would consult with the other two.

"Q. The final say was with your husband in those cases? A. In most cases, yes."

Page 37, as to the assertion of authority:

"Q. Then there was no necessity for the exercise of any authority in the way the business was operated by the three brothers, was there? A. No."

Page 39, as to the taking over of the functions of the deceased father: "A. Well, for—for at least ten years before my father-in-law died, my husband did exactly what he did after my father-in-law died.

"Q. But who took over the functions that your father-in-law had performed? A. I don't quite understand, as far as functions—

"Q. Didn't he do anything? A. No, excepting to go around, and supervision.

"Q. Well, who took over the supervising? A. Well, that was split up between the three of them. * * *"

Page 39, as to hiring: "A. Yes. The three of them together, I'd say. Some-

times he hired and sometimes Carlton hired. I can't make it actually definite."

■ The foregoing is taken from the testimony upon which the referee's decision is based, that Landon was self-employed as administrator from 1937 through 1943, which seems to me to be inconsistent with the excerpts quoted; and not according to the law so far as the status and duties of the administrator were concerned; and consequently that the finding—if the decision is to be construed as a finding—is not only not supported by substantial evidence but on the contrary is largely contradicted thereby.

■ To be sure, the plaintiff seems to have asserted a claim based upon the theory that Landon conducted the business as administrator, and hired himself as a plumber, and perhaps that is the theory of her complaint in this suit. Whatever the theory may have been, it must yield to the facts as they have been brought to light, since substance is to prevail over form, if this statute is to achieve its purpose.

Sight has not been lost of the argument now made for the defendant, that, even though the three brothers Sipperley probably conducted what resembled a partnership venture, Landon could not for present purposes be regarded as an employee of the enterprise. The cases cited have been consulted, namely:

Williams v. Hartshorn, 296 N.Y. 49, 69 N.E.2d 557. This case holds that an action for common-law negligence does not lie against one member of a partnership by the administrator of a deceased employee who was killed while at work, and that the Workmen's Compensation Law of New York, Consol.Laws, c. 67, provides the exclusive remedy to the administrator. The opinion refers to the fact that, while the Legislature has the right to consider a partnership apart from its members, it has not done so for general purposes. That decision has nothing to do with the Social Security Law under which this action is brought.

Matter of Lyle v. Lyle Cider & Vinegar Co., 243 N.Y. 257, 153 N.E. 67, 47 A.L.R. 840. This case arose under the New York Compensation Law, and had to do with the terms of a policy issued pursuant to that statute; the decision is that the wording of the policy then before the Court was not broad enough to cover an employer who was actually doing the work of an employee, although the statute provides in terms for possible coverage under such circumstances.

The Court said that the injured person, whose case was being considered, was actually engaged in doing the work of an employee, although he was himself a partner in the employing firm, and that the rights arising from his injury, so far as the policy was concerned, must be classified as those of an employer. The opinion closes with the suggestion that under such circumstances a policy should have been secured which by its terms would have covered an employer when acting as an employee.

Thus the New York Compensation Law recognizes the necessity for coverage in the practical sense, although legal theories might be thereby ignored.

Auten et al. v. Michigan Unemployment Compensation Commission, 310 Mich. 453, 17 N.W.2d 249, 250. Seemingly the issue turned on whether there were eight or more individuals acting as employees for the partnership whose affairs were under examination, and the Court used this language: "The act (of Michigan) is silent upon the question of whether a working partner may be considered as an employee of the copartnership." The opinion makes it clear that such a matter is entirely to be controlled by the provisions of the applicable statute.

Thus this case is thrown back to the Social Security Act under which the plaintiff seeks recovery. There seems to be no express provision to the effect that an employer being a member of a partnership may also be regarded as an employee when actually so engaged; but it is also clear that the statute does not exclude such a possibility. Having in mind the beneficent purposes of the law, no reason occurs to me to suggest that the remuneration which is paid for by the exaction of social security taxes should be withheld

116

on narrow legal grounds; this claimant is in exactly as much need of the money that it was the object of the statute to provide for her, as though her husband could be precisely and accurately designated only as an employee of the enterprise for which he was working.

The continued acceptance by the Government of the payment of taxes both from the plumbing concern as employer and from Landon Sipperley as employee, for the period of six years expiring in September of 1943, without calling attention to the possible complications arising from a narrow construction of the statute, squarely raises the question of whether the law is indeed being administered in this case with a view to giving to the Social Security Act the scope and effect which it was intended to have.

In the belief that the decision of the referee and the action of the Board, in refusing to review it, call for a remand of the cause to the Board, that will be ordered, for the purpose of taking further testimony as to the true and complete legal relationship which existed on the part of Landon Sipperley toward the enterprise in, for, or by which he was employed from January 1, 1937, down to the time of his death in 1943; and the necessary effect of that relationship in respect of the plaintiff's claim for a lump sum payment in consequence of his death, according to the fair intendment and purpose of the Social Security Act.