Mrs. Kathryn A. IRVIN, Plaintiff,

v.

Ovetta Culp HOBBY, as Secretary of the Department of Health, Education and Welfare and Commissioner of Social Security of the United States of America, Defendant.

Civ. No. 707.

United States District Court
N. D. Iowa, E. D.

May 13, 1955.

Ray E. Clough, of Clough & Clough, Mason City, Iowa, for plaintiff.

F. E. Van Alstine, U. S. Dist. Atty., Sioux City, Iowa, for defendant.

GRAVEN, District Judge.

On April 30th, 1954, the defendant rendered a decision denying the plaintiff benefits under the Old-Age Insurance provisions of the Federal Social Security Act. 42 U.S.C.A. § 401 et seq. This is an action brought by the plaintiff under Section 405(g) of 42 U.S.C.A. to review that decision. The plaintiff is a resident of this judicial district. The defendant made a motion for summary judgment which is here considered.

The plaintiff was born September 30, 1887. She became a widow in June, 1945. At the time of her husband's death he was a farmer. She had an only child, a daughter named Annette, who prior to 1945 married John L. Connolly. In 1945 the family home of Mr. and Mrs. John L. Connolly was at Elma, Iowa. At the time the plaintiff became a widow John L. Connolly was serving in the armed forces of the United States. The plaintiff upon the death of her husband

went to live in the Connolly home at Elma, Iowa. She lived in the Connolly home until Mr. Connolly returned from service in December, 1945, and for about a year thereafter. Sometime in 1947 Mr. and Mrs. Connolly moved to Waterloo, Iowa, where they had built a home. Mr. Connolly was engaged in the insurance business. The plaintiff continued to live in the premises formerly occupied by Mr. and Mrs. Connolly at Elma, Iowa. In 1948, at the instance of Mr. and Mrs. Connolly, the plaintiff moved to their home in Waterloo, Iowa. Mr. and Mrs. Connolly were the parents of two minor children. Shortly after the plaintiff moved into the Connolly home Mrs. Connolly commenced gainful employment outside of the home. The plaintiff continued to be in the Connolly home until around September 30, 1952, when she returned to Elma, Iowa. She later returned to the Connolly home for a short period but performed no services in the home. Thereafter she went to Riceville, Iowa, where she now resides. When the plaintiff returned to Elma, Mrs. Connolly discontinued her outside employment.

Prior to January 1, 1951, the plaintiff received some clothes and irregular payments from Mr. and Mrs. Connolly. Starting January 1, 1951, the Connollys started making regular payments to the plaintiff. From January 1, 1951, through September, 1951, the payments were $12.50 per week. Starting October 1, 1951, and continuing through September, 1952, the payments were $20 per week. The regular weekly payments were made to the plaintiff in cash on Friday of each week. The plaintiff reported the amounts paid to her by the Connollys as income in her federal income tax return. Neither Mr. nor Mrs. Connolly claimed the plaintiff as a dependent in his or her income tax return. While in the Connolly home the plaintiff did general housework such as cooking, washing, ironing, sewing, and cared for the two Connolly children. On occasions the plaintiff did baby sitting for the Connollys and answered telephone calls for Mr. Connolly. It appears that neither Mr. nor Mrs. Connolly, to any great extent, directed the plaintiff in connection with her work in their home. On occasions some instructions were given her by Mrs. Connolly and on occasions some instructions were given her by Mr. Connolly. The plaintiff apparently went about her work in the Connolly home as if she were in her own home.

Prior to January 1, 1951, domestic service performed in a private home was not "covered" employment within the provisions of the Social Security Act. By an Act approved August 28, 1950, Public Law 734, and effective January 1, 1951, such service became "covered" employment within the provisions of that Act.

Commencing with the quarter starting January 1, 1951, Mrs. Connolly sent in an Employer's Quarterly Tax Return for Household Employees for each quarter up through the quarter ending September 30, 1952. On September 30, 1952, the plaintiff attained the age 65. The Social Security Act requires six quarters of "covered" employment in order to be "fully insured" under the Act. On September 30, 1952, if her services in the Connolly home constituted employment within the provisions of the Act, the plaintiff had seven quarters of "covered" employment and was "fully insured" under the Act. In the Employer's Quarterly Tax Return for Household Employees sent in, Mrs. John Connolly was given as the employer and the plaintiff as the employee.

On November 14, 1952, the Bureau of Old-Age and Survivors Insurance of the Social Security Administration made the plaintiff an award of an Old-Age Benefit under the Act in the sum of $39.60 per month commencing with the month of October, 1952. The monthly payments were made to the plaintiff through March, 1953, at which time they were stopped. The payments were stopped following the receipt by the Social Security Administration of an anonymous letter questioning the payments to the plaintiff. On September 18, 1953, the Admin-

istration notified the plaintiff that it had determined that she was not entitled to the Old-Age Insurance Benefits because the services upon which her claim for benefits was based were not performed under an employer-employee relationship. The Administration requested that the plaintiff refund the sum of $237.60 which had already been paid to her as benefits. The Administration further informed her that if she was not satisfied with this determination she could have a hearing on the matter before a Referee. On October 29, 1953, the plaintiff requested such hearing and on April 21, 1954, a Referee designated by the Administration held a hearing at Osage, Iowa. The plaintiff appeared pro se at that hearing. On April 30, 1954, the Referee filed the following decision:

"Department of
"Health, Education, and Welfare
"Social Security Administration
"Office of Appeals Council
"Decision of Referee

"In the case of
"Kathryn A. Irvin
"Claimant and wage earner

"480–38–8955
"Social Security Account No.

Case No. Claim for:
3328–5 Old-Age Insurance Benefits

"On July 17, 1952 claimant filed application for old-age insurance benefits and she began receiving a monthly benefit of $39.60 effective October 1952. However, effective April 1953 the Bureau of Old-Age and Survivors Insurance of the Social Security Administration suspended claimant's benefits pending investigation of her entitlement. Based on subsequent evidence received, the Bureau determined that claimant was not entitled to benefits and therefore that she had been overpaid for the months of October 1952 through March 1953, and on September 18, 1953 she was requested to refund the amount of the overpayments. Claimant disagrees with this determination. A hearing in which claimant participated was held on April 21, 1954 in Osage, Iowa.

"The Bureau determined that claimant had not acquired the necessary coverage for entitlement to benefits, because the domestic services she rendered for her son-in-law and daughter, Mr. and Mrs. John Connolly, did not constitute 'employment' within the meaning of the So-

cial Security Act. Claimant contends, however, that from January 1, 1951 through September 1952 she was an employee of her son-in-law.

"Section 202(a) of the Social Security Act provides that in order for an applicant to be entitled to old-age insurance benefits he or she must be 'fully insured,' which means in the present case that the claimant must have been paid at least $50 in wages in at least six different calendar quarters. (See sections 213(a) and 214(a).) Section 209 defines 'wages' in general as remuneration for employment. Section 210 of the Act defines 'employment' generally as service by an employee for the person who employs him. Whether such an employment relationship exists is to be tested primarily by whether the person who pays the remuneration has the right to control or direct the person who renders the service. (See para. 404.1004(c) of the Regulations.)

"The issue in this case is whether claimant was an employee of her son-in-law.

"The claimant took up her residence with her daughter and son-in-

law in 1948 and since the daughter was employed outside she kept house for them, until the fall of 1952, when she was injured and went to live by herself. She states that she did everything in the home, including washing, ironing and cooking and the care of her two granddaughters (one of kindergarten age). Prior to 1951 she was not paid regularly for this work but was given cash and clothes from time to time. However, in 1951 she decided that she could not meet her bills any longer and her son-in-law agreed to pay her $12.50 per week, which he did all during 1951. She then had a chance to get other domestic employment at $25 a week, whereupon her son-in-law agreed to pay her $20 a week and did so until she left there. She worked six days a week. According to the claimant, the son-in-law sometimes told her what to do but generally instructions were not necessary.

"Claimant states that she was always paid in cash every Friday night and that her son-in-law and not her daughter paid her. She reported these wages for income tax purposes, and the file contains a statement by the son-in-law that neither he nor his wife ever claimed her as a dependent.

"It seems reasonably clear, and it is the finding of the referee, that the claimant was not her son-in-law's employee within the meaning of the Social Security Act. The mark of an employer is that he has the right to give orders. Here there is no definite showing that the son-in-law had a right to give the claimant orders as the result of the arrangement above described. The only testimony in that respect is that generally there was no need for orders or instructions as the claimant knew what had to be done and how to do it. The referee believes that she was motivated in doing this work, not by the promise or receipt of money, but by a sense of devotion to her daughter and grandchildren.

"That it was not a business arrangement is further shown by the fact that prior to this arrangement she performed essentially the same work for an occasional gift and without regular arrangement for or rate of pay. Nothing changed radically in 1951 except that the pay was regularized. It takes more than this, however, to convert what was essentially a family cooperation into an employment contract. It is unbelievable that any geuine (sic) hired help would work for such erratic compensation.

"Since the referee has found that claimant was not an employee of her son-in-law and therefore does not have the necessary coverage for entitlement to the benefits previously awarded to her, the issue arises as to whether she shall be required to refund the amount of the overpayments referred to above.

"Section 204 of the Social Security Act provides that even though a person has received an overpayment if he or she was not at fault in accepting it and it would cause hardship to compel him or her to repay the money or would be inequitable, then it need not be repaid. Paragraphs 404.508 and 404.509 of the Regulations interpret this to mean that if it would be unfair to compel the money to be repaid because the claimant has changed his or her position for the worse as a result of erroneous advice given by a representative of the Social Security Administration, or if it would be a hardship because he or she does not have an income or financial resources sufficient for more than ordinary needs, then repayment may be waived.

"Since the claimant apparently filed and has pressed her claim in good faith, she was probably without fault when she accepted the benefit checks in question. There is no

basis, however, for saying that it would be inequitable or unfair to require repayment, since there is no suggestion that any erroneous advice was given the claimant, and the claimant has not shown to the satisfaction of the referee that it would be a hardship. She states that she has no income and that when the benefit checks stopped coming she had to give up the house in which she was living and go to her son-in-laws She admits, however, that she sold certain bonds in 1953 or 1954 though she declines to tell how much of the proceeds she has now. Since, according to her own statement, the income from these bonds was $75 every six months it appears reasonable to assume that the value of the bonds at the time of the sale was at least $5,000. At any rate the claimant has the burden of showing that she does not have either income or financial resources sufficient for more than ordinary needs, and she has failed to do so. Since she has not made this showing, the referee is compelled to find that it would not be a hardship upon the claimant to repay the amount of the overpayments.

"It is the decision of the referee that claimant is not entitled to old-age insurance benefits and that the overpayment of benefits to her for the months of October 1952 through March 1953 should not be waived.

/s/Tench T. Marye

Tench T. Marye, Referee

"Date: April 30, 1954"

The plaintiff requested and was granted a review of the Referee's decision by the Appeals Council of the Social Security Administration. On August 30, 1954, the Appeals Council affirmed the findings of the Referee. On October 28, 1954, the plaintiff filed her complaint herein asking for a review of the Referee's decision.

Section 410(a) (4) of 42 U.S.C.A. of the Social Security Act excludes "Service performed by an individual in the employ of his son, daughter * * *." In connection with an investigation made by the Administration following the receipt of the anonymous letter, the Administration learned that the Mrs. John Connolly given as the plaintiff's employer in the Social Security tax returns and in the plaintiff's application for Old-Age Benefits was the plaintiff's daughter. When the Administration called the plaintiff's attention thereto she informed it in a letter dated May 6, 1953, that the statements that her daughter was her employer during the period of time in question were incorrect and that it was Mr. John Connolly who hired her and paid her and who was her employer.

The Social Security Act, Section 405 (b), 42 U.S.C.A., provides that:

"(b) The Administrator is directed to make findings of fact, and decisions as to the rights of any individual applying for a payment under this subchapter. * * *"

That Act, Section 405(l), 42 U.S.C.A., provides that:

"(l) The Administrator is authorized to delegate to any member, officer, or employee of the Federal Security Agency designated by him any of the powers conferred upon him by this section, * * *."

The functions of the Federal Security Administration were transferred to the Department of Health, Education and Welfare by Section 5 of 1953 Reorganization Plan No. 1 effective April 11th, 1953. 18 F.R. 2053, 67 Stat. 631, 5 U.S.C.A. following section 133z–15.

No question is raised as to the delegation of authority to the Referee who conducted the hearing, made the findings, and rendered the decision herein being considered. The findings of fact by the Referee and his decision constitute the findings of fact and the decision within the purview of the sections of the Social Security Act herein referred to.

The Social Security Act, Section 405 (g), 42 U.S.C.A., provides that:

"(g) Any individual, after any final decision of the Administrator

made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Administrator may allow. Such action shall be brought in the district court of the United States * * *. As part of its answer the Administrator shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Administrator, with or without remanding the cause for a rehearing. *The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive, * * *."* (Emphasis supplied.)

The Referee found that an employer-employee relationship did not exist between the plaintiff and her claimed employer during the period of time in question, and based upon such finding the Referee decided she was not entitled to the benefits claimed by her under the Act. If that finding is a finding of fact and is supported by substantial evidence, then under the Act it is conclusive in this Court. Similar provisions appear in the different Acts of Congress providing for administrative agencies. In the judicial review of decisions of administrative agencies the question has sometimes arisen as to what constitutes a finding of fact as distinguished from a question of law for purposes of such review. It is the view of the plaintiff that the question as to whether or not the plaintiff was an "employee" within the provisions of the Act presents a question of law which should be determined by the Court. It is also the view of the plaintiff that if it should be held that such question was a question of fact, the Referee's finding that the plaintiff was not

an "employee" within the provisions of the Act is not supported by substantial evidence.

There is only one United States Supreme Court case dealing with judicial review under the Social Security Act. That case is Social Security Board v. Nierotko, 1945, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718, 162 A.L.R. 1445. In that case the Social Security Board had found and determined that back pay of an employee under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq., did not constitute "wages" within the provisions of the Social Security Act. The District Court affirmed the Board's finding. The United States Circuit Court of Appeals for the Sixth Circuit reversed. The United States Supreme Court, in affirming the Court of Appeals, stated at pages 368, 369 of 327 U.S., at page 642 of 66 S.Ct.:

" * * * There is a suggestion that the administrative decision should be treated as conclusive, and reliance for that argument is placed upon National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 130, 64 S.Ct. 851, 860, 88 L.Ed. 1170, and Gray v. Powell, 314 U.S. 402, 411, 62 S.Ct. 326, 332, 86 L.Ed. 301. * * *

"The Social Security Board and the Treasury were compelled to decide, administratively, whether or not to treat 'back pay' as wages and their expert judgment is entitled * * * to great weight. The very fact that judicial review has been accorded, however, makes evident that such decisions are only conclusive as to properly supported findings of fact. * * * Congress might have declared that 'back pay' awards under the Labor Act should or should not be treated as wages. Congress might have delegated to the Social Security Board to determine what compensation paid by employers to employees should be treated as wages. Except as such interpretive power may be included

in the agencies' administrative functions, Congress did neither. * * *

"We conclude * * * that the Board's interpretation of this statute to exclude back pay goes beyond the boundaries of administrative routine and the statutory limits. * * * "

The case of Carroll v. Social Security Board, 7 Cir., 1942, 128 F.2d 876, involved the question of whether or not the plaintiff was an "employee" under the provisions of the Social Security Act. The plaintiff had been engaged in the liquidation of a state bank. At this time employment by a State was not "covered" employment within the provisions of the Act. Therefore, in order to qualify for the benefits it was necessary that the plaintiff be found an employee of the bank. The plaintiff's application was denied by the Bureau of Old-Age and Survivors Insurance of the Social Security Board. A hearing was then had before a Referee who rendered a decision adverse to the plaintiff, and the Appeals Council affirmed this decision. The matter was then affirmed on review by the Federal District Court. On appeal to the United States Court of Appeals the decision was reversed by a divided Court. The Court of Appeals stated that the Act was to be construed liberally in favor of the claimants. The Court further stated, at page 881:

"* * * In so concluding we have not overlooked the statutory admonition which binds us to accept the finding of the Social Security Board if supported by substantial evidence. The rule is not controlling, however, because the Board's decision, that plaintiff was not an employee within the terms of the Act, is without substantial support. Moreover, in our view, the rule has no application because the question presents an issue of law rather than of fact. It involves a construction of the Act."

In the case of Morgan v. Social Security Board, D.C.1942, 45 F.Supp. 349, the situation was that a corporation had numerous credits on its books to the account of its president and general manager, one Morgan. Upon his death his widow made application for benefits under the Social Security Act. She claimed that the credits to her husband's account constituted "wages" within the provisions of the Act. Her application was denied by the Bureau of Old-Age and Survivors Insurance. A hearing was then had before a Referee who determined that the applicant's husband had not been paid "wages" within the provisions of the Act. The Referee's decision was affirmed by the Appeals Council of the Social Security Board. On review the Court sustained the motion of the Social Security Board for summary judgment. However, the Court stated, at page 352:

"Counsel for the Board contend that there is substantial evidence to support the Board's finding that Morgan was 'neither actually nor constructively paid wages in the period from January 1, 1937 to April 9, 1938', and that, consequently, this court cannot consider this question in this proceeding. Were this merely a finding of fact, we would agree with this reasoning. 42 U.S.C.A. § 405(g). However, this finding represents a determination by the Board that the facts do not constitute payment of wages within the meaning of the Social Security Act as a matter of law. As such it is subject to review by this court."

The case of United States v. LaLone, 9 Cir., 1945, 152 F.2d 43, involved the application of the widow of LaLone for survivor's benefits under the Social Security Act. It was the claim of the widow that her husband had been an employee of F. S. Barrett & Co. The Bureau of Old-Age and Survivors Insurance denied her application. A hearing was held before a Referee who found that the applicant's husband had been a partner or joint venturer with F. S. Barrett & Co. and denied the application. The Appeals Council of the Social Security Board affirmed, but on review the District Court reversed, 57 F.Supp. 947. The United

States Court of Appeals for the Ninth Circuit reversed the District Court and directed that judgment be entered affirming the decision of the Referee. The Court of Appeals, after referring to the section of the Social Security Act relating to judicial review, stated, 152 F.2d at page 44:

"Under this section of the Social Security Act * * * the board's findings of fact must be sustained if the court finds they are supported by substantial evidence. This same finality extends to the Board's inferences and conclusions from the evidence if a substantial basis is found for them. * * *"

The Court continued, 152 F.2d at page 45:

"Whether Barrett & Co. was a partner or an employer of LaLone is partially a question of interpreting the applicable statutes and regulations and partially a matter of construing surrounding facts. * * * We cannot agree with the lower court's decision which fails to find substantial evidence behind the referee's decision and which holds that as a matter of law the referee was mistaken in holding that LaLone had a proprietary interest in the Barrett-LaLone Insurance Agency."

Two years later the United States Court of Appeals for the same Circuit decided Miller v. Burger, 1947, 161 F.2d 992. That case involved the amount of benefits the widow of one Burger was entitled to under the Survivors Insurance benefit provisions of the Social Security Act. Burger for some time prior to his death had been employed at a plant which processed fruits for market. His widow claimed that the wages earned by her husband at that plant should be included in determining the amount of the benefits to which she was entitled under the Act. At the time wages earned in "agricultural labor," as it was defined in the Act, were not includable for the purpose of determining benefits under the Act. The Social Security Board determined that the wages in question were to be ex-cluded from the computation of the benefits to the widow. On review the District Court reversed. On appeal the holding of the District Court was affirmed. The United States Court of Appeals was of the view that what was involved was the construction of the term "agricultural labor" in the Act. The Court stated, at page 994:

"* * * It is not to be doubted that in the final analysis, statutory construction is a legal function, and if the Board (under the facts of this case) can construe the language of the Act, the courts can examine that construction and determine its validity or invalidity."

The Court stated that its holding was distinguishable from its holding in the case of United States v. LaLone, just previously referred to, on the ground that the latter case involved a determination of fact.

The case of Sipperley v. Federal Security Administrator, D.C.1948, 77 F.Supp. 112, involved the application of the widow of one Sipperley for the payment of a lump sum death benefit under the provisions of the Social Security Act. The husband and his two brothers following the death of their father carried on a plumbing business which the father had owned. The widow's claim to the benefits was based upon payments made to her husband while he was engaged in carrying on the plumbing business with his brothers. The Social Security Board determined that the payments so made were not made under an employer-employee relationship. On review the District Court reversed, holding that the findings of the Board were not supported by substantial evidence. The Court, after referring to the admonitions contained in certain cases in connection with court review of decisions of the Social Security Board, stated, at page 113:

"The admonitions contained in the opinions in these cases are not thought to restrict the Court to an automatic approval of this decision of the Board, in view of the manifest purpose of Congress that, to some

extent at least, the Court should inform itself with respect to the evidence upon which the Board had acted, in order to appraise its substantiality."

The Court seemed to place some emphasis on the fact that Social Security taxes had been paid on the payments in question over a period of years, which payments had been retained by the Government, and no offers to refund the same had been made by it.

The case of MacPherson v. Ewing, D.C. 1952, 107 F.Supp. 666, involved the application of the widow of one MacPherson for lump sum benefits under the Social Security Act. The decedent's employer paid him $300 a month during eight months of illness. The question involved was whether those payments constituted "wages" within the purview of the Act. The Administrator determined that such payments did not constitute such "wages." On review the District Court reversed, holding that the decision of the Administrator was in law arbitrary and capricious.

In the case of Patton v. Federal Security Agency, D.C.1946, 69 F.Supp. 282, there was involved the question as to whether sums paid to an employee by his employer for subsistence and maintenance were to be treated as wages under the Social Security Act. The Social Security Board had prescribed certain regulations as to the status under the Act of sums paid for subsistence and maintenance of employees. In that case the Social Security Agency denied the request of the employee to revise his Social Security wage record so as to include the sums paid to him for subsistence and maintenance as wages under the Act. On review the District Court reversed. The Court was of the view that the pertinent regulations relied upon by the Agency were invalid in that they were in conflict with the provisions of the Social Security Act. The Court was also of the view that the question involved was one of statutory interpretation.

The case of Ayers v. Hobby, D.C.1954, 123 F.Supp. 115, involved the application of a widow for Survivors Insurance Benefits under the Social Security Act. The applicant's husband and his brother had been engaged in operating a saw mill. The question was whether he carried on that activity as an employee or as an independent contractor. The Administrator, acting through a Referee, decided that he was an independent contractor and denied the application of his widow. On review the District Court reversed. The Court held that while the facts found by the Referee were supported by substantial evidence, he had not properly applied the law to those facts.

The case of Walker v. Altmeyer, 2 Cir., 1943, 137 F.2d 531, involved the application of an attorney, one Walker, for Old-Age Benefits under the Social Security Act. At this time any person who received more than $15 per month as "wages" under the Act was ineligible to receive benefits. Walker rented office space for $100 per month from another attorney. In return, this other attorney paid Walker an hourly rate for legal services performed for him, thus enabling Walker to work off his rent. Walker alleged that this arrangement made him an independent contractor, so that the payments he received did not constitute "wages" under the Act. The Referee found that Walker was employed for wages under the meaning of the Act and that he was not entitled to the claimed benefits since his earnings were in excess of $15 per month. On review the District Court reversed. On appeal the United States Court of Appeals reversed the District Court. The Court of Appeals stated, at pages 533, 534:

"The facts underlying that decision which were found on substantial evidence were, of course, binding upon the district court. That is not the question this appeal raises. The error into which the court fell was not that of making new and contrary findings but that of substituting new and contrary inference of its own from the found facts which led it to reverse the administrative conclusion which had been reached as to

the employee status of the plaintiff. * * * It was the judgment of the administrative body as to an employer-employee relationship rather than that of the court which the statute made effective provided that judgment was based upon conclusions reasonably reached upon due consideration of all relevant issues presented after parties in interest had been given a fair hearing or a fair opportunity to be heard upon the facts and the applicable law. Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301."

The case of Shelden v. Hobby, D.C. 1954, 125 F.Supp. 263, involved the application for Old-Age Benefits under the Social Security Act by one Shelden who was self-employed. Income derived by a lawyer in the exercise of his profession is excluded, while income derived from a "trade or business" is within the Act. The applicant, who was a lawyer, claimed that in addition to practicing law he had been engaged in the "trade or business" of an "income Tax Computer." His application for benefits was based upon his services in the latter capacity. The Referee held that the income of the applicant in that capacity was income derived from a "trade or business" and that he was entitled to the benefits claimed. The Appeals Council of the Social Security Agency found that the income in question was derived from the exercise of his profession as a lawyer and reversed the Referee. On review the District Court affirmed the findings of the Appeals Council. The Court did not discuss the law-fact problem. It referred to the findings of the Appeals Council as being findings of fact and held that they were supported by substantial evidence.

The case of Hemmerle v. Hobby, D.C. 1953, 114 F.Supp. 16, involved the application of one Hemmerle for Old-Age Benefits under the Social Security Act. The question was whether the applicant had the status of an employee or independent contractor in connection with the sale of machinery manufactured by a machine company. The relationship between the applicant and the machine company grew out of a written agreement. The Referee held that the relationship of employer and employee did not exist between the applicant and the machine company. On review the District Court affirmed. The Court stated, at page 19:

"In looking to the question of whether one is an employee or not, the facts surrounding each case must be inspected in their own light; * * *."

The only decision of the United States Court of Appeals for the Eighth Circuit relating to the review of administrative decisions under the Social Security Act is the case of Social Security Board v. Warren, 1944, 142 F.2d 974. In that case Warren was receiving Old-Age Benefits under the Social Security Act. At the time the Act provided that a person receiving wages in excess of $15 per month was not eligible to be paid such benefits. Warren was a member of the executive committee of a corporation which held weekly meetings. The members of the committee received $5 each for their services at such meetings. The Social Security Board found that the compensation paid Warren for such services constituted "wages" within the purview of the Social Security Act and denied him Old-Age Benefits during the period he was receiving such compensation. On review the District Court reversed. On appeal the Court of Appeals reversed the District Court. The Court of Appeals held that the finding of the Social Security Board that Warren was an employee of the corporation within the provisions of the Act, and that the compensation paid him constituted "wages" within the Act, was supported by substantial evidence and was conclusive upon the District Court. The Court of Appeals did not discuss the law-fact problem.

The case of Norment v. Hobby, D.C. 1953, 124 F.Supp. 489, involved an application for Old-Age Insurance Benefits under the Social Security Act. The applicant claimed that she had performed

domestic services for her sister from January 1, 1951, through June, 1952, and received $51 for each quarter of employment. If such services constituted employment within the provisions of the Act, the applicant was "fully insured" and would be entitled to the Old-Age Benefits provided thereunder. The Bureau of Old-Age and Survivors Insurance of the Social Security Agency denied her application. A hearing was had before a Referee who found that no employer-employee relationship existed between the applicant and her sister. The Referee found that the applicant and her sister had been living together for many years prior to January 1, 1951, with the applicant performing household services and the sister furnishing the necessities. The Appeals Council refused to review the decision of the Referee, and under the applicable regulations and practice the Referee's decision became a "final decision of the Administrator." On review the District Court held that the finding of the Referee as to the non-existence of an employer-employee relationship was supported by substantial evidence and was conclusive.

In the case of McGrew v. Hobby, D.C. 1955, 129 F.Supp. 627, a finding by the Referee that the relationship of employer and employee did not exist between the applicant and her sister was affirmed by the District Court on review. It was the claim of the applicant that she had been employed by her sister as a domestic from January, 1951, through December, 1952.

The cases of Schmidt v. Ewing, D.C. 1952, 108 F.Supp. 505; Ray v. Social Security Board, D.C.1947, 73 F.Supp. 58; and Nigro v. Hobby, D.C.1954, 120 F. Supp. 16, also pertain to the review of Social Security Administration decisions by the courts.

▇▇▇ The defendant contends that the finding of the Referee as to the non-existence of an employer-employee relationship between the plaintiff and John L. Connolly was a finding of fact and that the record discloses that there is sub-stantial evidence to support that finding. The defendant argues as an alternative ground for sustaining the decision of the Referee that the record discloses that whatever services the plaintiff rendered in the Connolly home she rendered as an employee of her daughter and as such employee she was not eligible for the benefits claimed. The plaintiff in writing denied the existence of an employer-employee relationship between her and her daughter. The plaintiff in writing claimed that the only employer-employee relationship was between her and John L. Connolly. Under that state of the record the Referee's finding and decision related only to the matter of the existence or non-existence of an employer-employee relationship between the plaintiff and John L. Connolly. In 73 C.J.S., Public Administrative Bodies and Procedure, §§ 200, 201, pp. 547, 548, it is stated as follows:

"As a general rule the court may not review basic issues involved in the determination of the administrative body, where such body made no findings on such issues, and a sufficient finding of facts is required to justify a review as to whether the administrative decision is contrary to the substantial weight of the evidence. So, where an administrative body is empowered to make findings of fact, it is not the province of the courts to discharge that function merely because the administrative agency has not acted. * * *.

"Generally, on judicial review, an administrative order must be judged on the ground on which the record discloses that the action was based, and, where the decision of the administrative body is explicitly based on the applicability of certain principles, its validity must likewise be judged on that basis. Accordingly, an administrative order cannot be upheld unless the grounds on which the agency acted in exercising its powers were those on which its action can be sustained. The court cannot correct a statement in an

opinion of the administrative body, but can only determine that the finding of such body is in error if the court so concludes. \* \* \*"

In Securities and Exchange Commission v. Chenery Corp., 1946, 332 U.S. 194, at page 196, 67 S.Ct. 1575, at page 1577, 91 L.Ed. 1995, rehearing denied, 1946, 332 U.S. 783, 68 S.Ct. 26, 92 L.Ed. 367, the following appears:

"When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency."

In Democrat Printing Co. v. Federal Communications Commission, 1952, 91 U.S.App.D.C. 72, 202 F.2d 298, at page 303, the Court stated:

"\* \* \* But we cannot decide now whether this reason suffices to support the order. Our review is limited to the reasons which the Commission relied upon for its action."

See also, Cantlay & Tanzola, Inc., v. United States, D.C.1953, 115 F.Supp. 72.

■ It seems clear that neither the defendant nor this Court can rely upon grounds and reasons to sustain the Referee's findings when those grounds and reasons were not the basis of the Referee's decision.

The Referee in the present case found that an employer-employee relationship did not exist between the plaintiff and John L. Connolly. There is first pre- sented the question as to the nature of that finding for purposes of judicial review.

■ The finding of the Referee does not purport to be based upon the construction or interpretation of any particular provision of the Social Security Act or of any of the regulations prescribed thereunder. The finding purported to be a finding of fact based upon the surrounding facts and circumstances and the conclusions and inferences drawn therefrom. It is the view of the Court that the finding of the Referee as to the non-existence of an employer-employee relationship is a finding of fact. That finding, if supported by substantial evidence, is conclusive upon this Court. In passing upon the question as to whether that finding is supported by substantial evidence, it is the duty of this Court to consider the whole record. Universal Camera Corp. v. National Labor Relations Board, 1951, 340 U.S. 474, 488, 71 S.Ct. 456, 95 L.Ed. 456. The finality given to a finding of fact by the Social Security Agency extends to the inferences and conclusions drawn from the evidence if there is a substantial basis for them. United States v. LaLone, supra. It is the view of the Court that there is a substantial basis for the inferences and conclusions drawn by the Referee in this case.

■ It is the holding of the Court that the finding of the Referee as to the non-existence of an employer-employee relationship is sustained by substantial evidence.

The Referee after deciding that the plaintiff was not entitled to the Old-Age Insurance Benefits decided that repayment of the payments that had been made to her by way of such benefits should not be waived. That decision is also brought up for review. Section 204 of the Social Security Act, 42 U.S.C.A. § 404, relates to the matter of payments made in error. Subsection (a) of that section provides for the proper adjustment by the Administrator under regulations prescribed by

864

the Administrator. Subsections (b) and (c) of that section provide, in part, as follows:

"(b) There shall be no adjustment or recovery by the United States in any case where incorrect payment has been made to an individual who is without fault * * * and where adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience.

"(c) No certifying or disbursing officer shall be held liable for any amount certified or paid by him to any person where the adjustment or recovery of such amount is waived * * * under subsection (a) of this section * * *."

The following Regulations were prescribed by the Administrator under Subsection (a) of Section 204:

"§ 404.506 General applicability of section 204(b).—Section 204(b) of the act provides that there shall be no adjustment or recovery (by legal action or otherwise) by the United States in the case of an incorrect payment to an individual (including payments made prior to January 1, 1940), if the following conditions exist:

"(a) Such individual is without fault, and

"(b) Adjustment or recovery would either:

"(1) Defeat the purpose of title II of the act, or

"(2) Be against equity and good conscience.

"§ 404.507 Fault.—'Fault,' as used in 'without fault,' (see § 404.-506) applies only to the individual. (Although the Administration may have been at fault in making the payment, that fact does not relieve the payee if he is not without fault.) What constitutes fault, except for 'deduction overpayments' (see § 404.510) depends upon whether the facts show the incorrect payment resulted from:

"(a) An incorrect statement made by the individual which he knew or should have known to be incorrect;

"(b) Failure to furnish information which he knew or should have known to be material; or

"(c) Acceptance of a payment which he either knew or could have been expected to know was incorrect.

"§ 404.508 Defeat the purpose of title II.—'Defeat the purpose of title II' means defeat the purpose of benefits under this title, i. e., to provide at least a subsistence income for beneficiaries. This depends upon whether the individual has an income or financial resources sufficient for more than ordinary needs, or is largely or solely dependent upon current payment of benefits for the necessities of life.

"§ 404.509 Against equity and good conscience.—'Against equity and good conscience' means that it would be inequitable to ask for repayment from the individual (regardless of his financial circumstances). This depends upon whether the individual by reason of the payment has

"(a) Relinquished a valuable right, e. g., a wage earner who has retired from employment which he is now unable to regain; or

"(b) Changed his position for the worse, e. g., a wage earner entered into employment relying on the erroneous advice of a Bureau representative that his employment after entitlement is not covered and did not report the employment."

In order to be exonerated from repayment liability the burden was upon the plaintiff to meet the conditions prescribed in Regulation 404.506 as defined by Regulations 404.507, 404.508, and 404.509.

 The first condition to be met by the plaintiff was that she was without fault. The Referee found she had met that condition. However, in order for the plaintiff to be exonerated from re-

payment liability, it was further necessary for her to meet one of two other conditions. One of those conditions is elaborated upon in Regulation 404.-508 and the other in Regulation 404.-509. Under Regulation 404.509 the plaintiff's financial circumstances were not material. Under Regulation 404.-508 they were material. The Referee found that she had not established that non-exoneration would be "against equity and good conscience" as defined in Regulation 404.509. Nevertheless, the plaintiff would be entitled to be exonerated from repayment liability if she established that the failure to exonerate would "defeat the purpose" of the Old-Age and Survivors Insurance provisions of the Act. In order to establish that matter, the burden was upon her to make a showing that she did not have an income or financial resources sufficient for her ordinary needs. In administrative proceedings, the general rule is that an applicant for relief, benefits or a privilege has the burden of proof. 73 C.J.S., Public Administrative Bodies and Procedure, § 124, p. 444. The Referee found that she had not sustained the burden that was placed upon her. That finding was premised upon lack of proof. No cases have been found pertaining to the matter of repayment of benefits under Section 204.

The nature, for purposes of court review, of an administrative determination that there is failure of proof on the part of one who is a party to an administrative hearing is not entirely clear. If such a determination is a finding of fact, then it is conclusive for purposes of court review if supported by substantial evidence. The question as what would constitute substantial evidence in support of a finding of lack of evidence might seem to verge into metaphysics. However, in most cases there inheres in a negative finding of fact a finding that evidence in support of the affirmative was not sufficient.

The Administrative Procedure Act, Section 1009(e) of 5 U.S.C.A., defines the scope of court review of administrative decisions. Subsection (B) (1) of that section provides for the setting aside of Agency findings and conclusions which are found to be "arbitrary" or "capricious," or "an abuse of discretion". An Agency finding or conclusion of lack of evidence would be arbitrary and capricious if the record afforded no substantial basis for such a finding.

It is the holding of the Court that the Referee's decision that the claim of the plaintiff for exoneration from repayment liability be denied for lack of evidence was not arbitrary and capricious in that the record afforded a substantial basis therefor.

In this case the defendant seeks affirmance of the Referee's decision by means of a motion for a summary judgment. In support of that motion the defendant submitted a transcript of the entire record of the proceedings before the Referee. There is reluctance on the part of the courts to dispose of a controverted case by the granting of a motion for summary judgment. However, in reviewing the decision of the Referee this Court is limited to the record before the Referee. Holland v. Altmeyer, D.C.1945, 60 F.Supp. 954, 960. If a trial were had in this case this Court would be limited in its consideration to the record before the Referee. Therefore, this Court now has before it for consideration all that it would have at a trial.

It is the view of the Court that the issues between the parties in this case may properly be determined by means of a summary judgment procedure.

It is hereby ordered that the defendant's motion for summary judgment be and the same is hereby granted and that judgment be entered affirming the decision of the Referee and the Appeals Council.