**AYERS et al. v. HOBBY.**

**Civ. No. 285.**

United States District Court,
D. Virginia, at Lynchburg.

July 2, 1954.

Bolling Lambeth, Bedford, Va., for plaintiffs.

John Strickler, U. S. Atty., Roanoke, Va., for defendant.

BARKSDALE, District Judge.

This action was instituted by Lillie M. Ayers, widow of Hubert E. Ayers, acting on her own behalf and on behalf of her child, Lucy A. Ayers, against the Security Administrator, for review of a decision of the Administrator denying the benefits of the Social Security Act to them. The deceased husband and father, Hubert E. Ayers, with his broth-

er, Robert L. Ayers, operated a sawmill for Overstreet-Smith Lumber Company from March 24, 1943, to June 30, 1949, and the sole question presented in this action is whether or not during that period of time the deceased, Hubert E. Ayers, was an "employee" within the meaning of the Social Security Act, or whether he was an "independent contractor", as found by the Referee. If, during this period Hubert E. Ayers was an employee, his widow and child are entitled to the benefits of the Act: if he was during this period an independent contractor, they are not entitled to such benefits. As defined in the Act, 42 U.S. C.A. § 410(k)(2):

"The term 'employee' means * * * (2) any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee".

■ This proceeding is, of course, not a trial *de novo*, since the Act provides, Title 42 U.S.C.A. § 405(g):

"* * * The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive, * * *."

Therefore, it appears that the functions of the court on this review are to determine whether or not the factual findings of the Administrator are supported by substantial evidence, and if the findings are so supported, whether or not the Referee properly applied the law to these facts. The Referee's findings of fact were as follows:

"The wage earner and his brother on March 24, 1943, entered into a written contract with the Overstreet-Smith Lumber Company to cut, log, and saw timber on a timber boundary owned by the company. The company furnished the sawmill, all equipments and tools, and a team of oxen to be used in the operation. It also furnished feed for the oxen and paid for the upkeep and maintenance of the equipment. Under the first contract the brothers were paid thirteen (13) dollars per thousand board feet of lumber, which was cut, sawed, and left on the premises from where it was removed by the lumber company to its place of business. The wage earner and his brother worked about the operation themselves, one being a sawer and the other a logger. They hired and paid their own labor and each week when paid by the company for the lumber delivered, divided the profits equally after paying the labor. They paid Social Security taxes on labor employed by them and had an employer's identification number. Workman's Compensation was carried on the employees by the lumber company, for which the wage earner and his brother reimbursed the company.

"The operation was strictly on a job basis at so much per thousand feet; the brothers chose the location of the saw mill from time to time, determined their own working hours, the hours of work of their employees, whom they hired and discharged, and their work was not subject to any supervision by the company.

"After the first boundary of timber was cut, which required approximately one year, various other similar projects were undertaken for the same company by the brothers under the same terms and conditions, except that the payment per thousand feet varied from tract to tract and also advanced somewhat with increasing costs of labor. However, when an agreement had once been reached with respect to the price per board foot for cutting a tract of timber, the price remained the same until that job was completed.

"Occasionally the lumber company would send the brothers an order and ask that certain sizes of lumber be cut on a particular day. However, usually the brothers cut lumber of standard specifications

and in such sizes and lengths as to get the best advantage out of the trees being cut."

Upon consideration of the record, I would probably have found that Overstreet-Smith Lumber Company exercised a greater degree of control over the sawmill operation of the Ayers brothers than is inferable from the Referee's findings. I nevertheless conclude that the Referee's findings are based on substantial evidence, and are conclusive as far as they go. However, one undisputed fact included in the Referee's findings, has been brought to my attention, which appears to me to be quite important: The Referee refers to the written contract of March 24, 1943, entered into between Overstreet-Smith Lumber Company and the Ayers brothers, covering the terms of the sawmilling operation which the Ayers brothers were about to undertake for Overstreet-Smith Lumber Company. Further, in his findings, the Referee says that:

"* * * various other similar projects were undertaken for the same company by the same brothers under the same terms and conditions, * * * except that the price per thousand feet was increased from time to time."

In this contract, which covered the entire operation here under consideration, there appears the following provision (Record, p. 39):

"Second parties [the Ayers brothers] hereby agree to proceed with the work as rapidly as weather conditions will permit, and they agree to cut the timber and manufacture the lumber *as may be directed by the party of the first part* [Overstreet-Smith Lumber Company], and all lumber to be cut to standard thickness and widths." (Italics mine).

### The Law.

Cases turning upon the question of whether a certain individual, firm or corporation, at a particular time, was an "employee" or "independent contractor", are numerous, and the question is considered from numerous and diverse angles. The question of whether certain persons engaged in sawmill operations for a large lumber company were employees or independent contractors, was considered by me in Burruss v. Early, D.C., 44 F.Supp. 21. I reached the conclusion that all of the operators of sawmills in that case were independent contractors, and that therefore the lumber company was not required to pay Social Security taxes upon them or their employees. However, in my opinion, the facts and circumstances of the instant case tend more strongly to support the conclusion that the Ayers brothers were employees than did the facts and circumstances of any of the operations considered in the Burruss case. This case was not appealed.

Later, I held that a seamstress, making alterations in and for a retail clothing store, was an independent contractor. Upon appeal, United States v. Vogue, Inc., 4 Cir., 145 F.2d 609, my decision was reversed, and it seems to me that the situation presented in the instant case falls within the ambit of the decision of our Court of Appeals in the Vogue case.

I think the following quotation from the opinion in the Vogue case, supra, 145 F.2d at page 611, is pertinent here:

"The law of independent contractors has an important place in the law, but surely it was never intended to apply to humble employees of this sort, so completely subject to the domination and control of the employer. To allow the employer to escape the consequences or to deny the employee the benefits of the employer-employee relationship because of agreement that payment be made on the piece work basis or because the employee exercises the judgment with respect to the work that is expected of any skilled worker, is to lose the substance of the relationship in attempting to apply certain rule of thumb distinctions in the law of independent contractors. The fact that one having

an independent calling, such as a cook, gardener or chauffeur, exercises a judgment as to the work done free of detailed direction by his employer does not make him an independent contractor (27 Am.Jur. 498; note Ann.Cas.1918C, p. 653 et seq.); and we think there can be no question here but there was such general right of control by plaintiff over these women, who were making repairs in the store on goods sold to its customers, as to establish beyond question the employer-employee relationship with the incidents thereto pertaining. Cf. Gulf Refining Co. v. Brown, 4 Cir., 93 F.2d 870, 116 A.L.R. 449; H. E. Wolfe Const. Co. v. Fersner, 4 Cir., 58 F.2d 27."

█ It is significant here that the Ayers brothers never at any time invested one dollar in their sawmilling business. Indeed, they never even advanced any money. Overstreet-Smith Lumber Company provided the timber and sawmill, furnished gas, oil and saw-teeth for the mill, furnished the oxen to pull the logs to the mill, and even fed them. At each pay day, Overstreet-Smith Lumber Company provided the Ayers brothers with sufficient money to pay the labor and hauled most of the employees to and from work.

As found by the Referee, the Lumber Company exercised some control over the operation by giving the Ayers brothers bills for lumber for which the Lumber Company had orders, and directing that they saw lumber to meet the specifications in these bills. However, the degree of actual control exercised is not as important as the right to control. Taken in connection with the other circumstances of this case, the agreement by the Ayers brothers, "* * * to cut the timber and manufacture the lumber as may be directed by" the Overstreet-Smith Lumber Company, gave the Lumber Company the almost unlimited right of control, not only of results, but of "the details and means by which that result is accomplished." United States

v. Silk, 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757; Hemmerle v. Hobby, D.C., 114 F.Supp. 16.

It is therefore my conclusion that the Referee did not properly apply the law to the facts, and that the conclusion which should have been reached was that Hubert E. Ayers, while, with his brother, operating the sawmills for Overstreet-Smith Lumber Company, from March 24, 1943, to June 30, 1949, was an "employee" within the meaning of the Social Security Act.

It therefore follows that an order will be entered reversing the decision of the Administrator in this case and directing that plaintiffs be accorded a widow's current and child's insurance benefits as provided in the Act.