**Emily S. WILLARD and Robert
M. Willard**

v.

**Oveta Culp HOBBY, Secretary of Health,
Education and Welfare.**

**Civ. A. No. 17191.**

United States District Court
E. D. Pennsylvania.
July 20, 1955.

---

Edward F. Cantlin, Lutz, Fronefield, Warner & Bryant, Media, Pa., for plaintiffs.

**68**

W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

KIRKPATRICK, Chief Judge.

In this civil action the plaintiffs ask the Court to reverse the Appeals Council of the Department of Health, Education and Welfare and to adjudge that they are entitled to old age insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C.A. § 401 et seq.

The plaintiffs had been employed for many years as domestic servants in the home of H. Harrison Smith's father in Bryn Mawr, Pennsylvania. In 1925 they purchased a farm, Mr. Willard ceased to work for the Smiths and moved to the farm where he has since resided. Mrs. Willard remained at Bryn Mawr in the employ of the elder Mr. Smith, and after his death continued to work for his son. At the end of 1951, Mr. Willard's mental and physical condition had become so impaired that his wife found it necessary to leave her position in Bryn Mawr and move to the farm to take care of him.

Upon making application for social security benefits, Mrs. Willard was informed that she was ineligible, inasmuch as she had only four quarters of coverage, whereas six were required under the Act. Although she had been employed by the Smiths for many years, the Social Security Act first became applicable to domestics in 1951, and therefore she had acquired coverage in that year only. She was told that, if she could obtain employment for an additional period of six months, she would then become eligible for benefits.

The Willards were in financial straits, and Mrs. Willard appealed to Mr. Smith who was anxious to help them. On August 20, 1952, he wrote a letter to Mrs. Willard in which he said "I will employ you to take care of Robert (Mr. Willard) at the farm in Coatesville. I will employ you during the last two quarters of this year at a salary of $90.00 per month— the same rate of pay you received at Bryn Mawr." He also said "I can see that if you get employment for another 6 months under Social Security Law, and thereby qualify for social security benefits, it will be a great help to you. I have thought the matter over and I will help you." The remainder of the letter is devoted to an attempt to explain the technical aspects of the Social Security Law to Mrs. Willard.

Thereafter, Mr. Smith paid Mrs. Willard at the rate of $90.00 per month for the last two quarters of 1952, the payments covering a period beginning July 1, which was some six weeks or more prior to the date of his letter. It is undisputed that at no time during the last two quarters of 1952 did Mrs. Willard see Mr. Smith or communicate with him and it is also a fact that, after Mr. Smith's letter, she carried on exactly as she had prior thereto.

▆▆ The Appeals Council based its decision mainly upon the ground that there can be no employment without a valid contract and that no one can make a valid contract with a wife to take care of her ailing husband, first, because consideration for the promise to pay is lacking and, second, because such a contract would be against public policy. Even if one takes the rather legalistic approach to the question which the Appeals Council took and overlooks the fact that the Social Security Law deals realistically with practical situations rather than precise legal concepts, there is no basis for the position that Mr. Smith's promise was without consideration. True, doing what one is legally bound to do is not a valid consideration for a promise on the part of the other party to the contract to pay more or give more for the performance of the obligation but "Consideration is not insufficient because of the fact * * * (d) that the party giving the consideration is then bound by a contractual or quasi-contractual duty to a third person to perform the act or forbearance given or promised as consideration." Restatement of the Law, Contracts, Chapter 3, Section 84.

▆ All the cases cited by the Council and by the defendant to the effect

that promises to pay a wife or husband for supporting or caring for his or her spouse are against public policy are cases in which a promise was made by the other spouse or by his or her representative or guardian. There is no public policy involved where, as here, the promise comes from a third person. In all probability Mrs. Willard could have obtained employment elsewhere and employed someone to take care of her husband or she might, by working, have been able to pay for his keep in an institution. Both she and Mr. Smith preferred that she remain at home and take care of him and there is no policy which would invalidate the arrangement.

In addition to the reasons relied on by the Appeals Council, the defendant raises the point that the Social Security Act, 42 U.S.C.A. § 405(g), provides that "The findings of the Administrator as to any fact, if supported by substantial evidence, shall be conclusive." In order to avail itself of this provision, the defendant endeavors to deduce from the opinion of the Council a fact finding that Mr. Smith's intention was not to employ Mrs. Willard but to make her a gift or series of gifts. Even if such finding is implicit in the opinion, which I doubt, it is not only unsupported by any substantial evidence but is, in fact, directly contrary to all the evidence—testimony, circumstances and probabilities in the case.

Mr. Smith was a lawyer, he wanted Mrs. Willard to qualify for social security benefits, he knew that in order for her to do so he had to employ her and that he had to do it by creating a bona fide relationshp of employer and employee, and he was also aware that such relationship might depend upon the intention of the parties. It seems completely unreasonable to say that the evidence shows that he did not intend to do the only thing by which he could accomplish his purpose or, in view of his and Mrs. Willard's testimony as to their understanding of the relationship, that there is any evidence to that effect.

Of course, it goes without saying that the mere fact that Mr. Smith desired to help his old family servants in their straitened circumstances or that he felt a certain obligation to do so does not affect the ultimate question, which is: Did Mrs. Willard become his employee? If she did, then his motive in employing her and the value of her services to him are immaterial. There being no statutory prohibition, I know of no policy of the law which prohibits a person from employing another to perform even entirely useless services for the sole purpose of making the employee eligible for social security. All courts agree that the Act should receive a liberal construction and that courts should resolve doubts in construing remedial legislation providing unemployment insurance and old age protection in favor of coverage rather than exemption. Ewing v. McLean, 9 Cir., 189 F.2d 887.

Judgment accordingly.