Irene E. AUBREY and Irene E. Aubrey as guardian of Carolene Ann Blystone, a minor, Plaintiff,

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare of the United States, Defendant.

Civ. No. 7381.

United States District Court
N. D. California, N. D.

May 15, 1957.

William H. McPherson, Fairfield, Cal., for petitioner.

Lloyd H. Burke, U. S. Atty., and William B. Spohn, Asst. U. S. Atty., San Francisco, Cal., for respondent.

HALBERT, District Judge.

Petitioner has brought this action under the provisions of Title 42 U.S.C.A. § 405(g)[1] for judicial review of a final decision of respondent denying petitioner mother's insurance benefits under § 402(g), and, in her capacity as guardian of Carolene Ann Blystone, child's insurance benefits under § 402(d).

Based on the decision of the Referee of the Social Security Administration, Department of Health, Education and Welfare, the following material facts appear from the record. Petitioner, with Walter R. Aubrey, the deceased wage earner, upon whose wages the claims for benefits were based, went through a marriage ceremony in Mexico on June 17, 1947, in good faith, believing that she and Walter R. Aubrey were validly intermarried thereby. She and the deceased wage earner were thereafter domiciled in California until the date of his death on May 11, 1955. Three children were born of this union, who, along with Carolene Ann Blystone, petitioner's child by her "former" spouse, Phillip R. Blystone, made their home with petitioner and the deceased wage earner. The Referee found, however, that petitioner and Mr. Aubrey were never validly married for the reason that, at the time of their pur-ported marriage, petitioner was still validly married to Phillip R. Blystone, although, on the basis of certain facts, not here relevant, she believed that Mr. Blystone had obtained a valid divorce from her prior to her marriage to Mr. Aubrey. The record reveals that, in fact, no divorce had ever been obtained severing the marriage of petitioner and Mr. Blystone.

In applying the law of California (which law, being the law of the state of the deceased wage earner's domicile at the time of his death, is expressly declared to be applicable under § 416(h) (1) in determining a claimant's status) to these facts, the Referee held that petitioner was not the "widow" of the deceased wage earner and thus was not entitled to mother's insurance benefits under § 402(g). The Referee further held that, because petitioner was not the "widow" of the deceased wage-earner, and thus, not his wife, Carolene A. Blystone was not the "stepchild" of the deceased wage earner, and thus, "not the 'child' of the wage earner as that term is defined in Title II of the Social Security Act" (see: p. 4 of the Referee's decision). The Referee based the denial of benefits under §§ 402(g) and 402(d) on the above grounds alone, indicating that "the claimant on her own behalf and on behalf of Carolene A. Blystone has met all of the (other) conditions for entitlement to the benefits applied for" (see: p. 1 of the Referee's decision).

Initially, it will be well to define the scope of review by this Court under § 405(g). Review should go no farther than to determine whether the fact findings are supported by substantial evidence, and whether the agency correctly applied the law to the facts. Hemmerle v. Hobby, D.C., 114 F.Supp. 16, 19, and Ayers v. Hobby, D.C., 123 F.Supp. 115, 116. The record below in this case supports the agency's fact determinations, and on the basis of such facts, the sole questions presented for this Court's determination are:

[1]. Unless otherwise noted, all references to a section in this opinion will be to a section in Title 42 U.S.C.A.

I. Was petitioner's status under the California law sufficient to satisfy the language of § 416(h) (1), and

II. Can Carolene A. Blystone be considered a "child" of the deceased wage earner within the meaning of § 416(e)?

Respondent has filed a motion for summary judgment, and petitioner has filed a separate motion for judgment on the pleadings. Both of these motions are based on the entire record in this case, which is now before the Court.

[2, 3] Before reaching the question of petitioner's status under § 416(h) (1), the status of Carolene A. Blystone will first be considered. In order to qualify for "child's insurance benefits" under § 402(d), the applicant must (in the case of a deceased wage earner) either be the wage earner's own child, the adopted child of the wage earner, or the step-child of the wage earner (§ 416(e)). Since in this case there is no evidence of an adoption of Carolene A. Blystone by the deceased wage earner, her eligibility, of necessity, is dependent upon her having the status of either a "child" or a "stepchild", as those terms are defined in the statute and the applicable regulations. Under the regulations (20 C.F.R., § 404.1109(b)), the status of "stepchild" is dependent upon the *valid* marriage of the applicant's natural[2] parent and the wage earner. The Referee correctly concluded, on the basis of the facts in this case, that petitioner

(Carolene's mother) and the wage earner were never validly married, and hence, the status of "stepchild" was never conferred on Carolene Blystone. Under § 404.1109(c), Title 20 C.R.F., however, an applicant who "is neither the step-child nor legally adopted child of such individual (the wage earner), but has the status of child of such individual under applicable state law", may be considered a child for the purposes of benefits under the Act. For some purposes under the California law Carolene Blystone would be considered the "child" of the deceased wage earner, Aubrey (see: California Civil Code, § 209, and Trudell v. Leatherby, 212 Cal. 678, 681–682, 300 P. 7) but, if she is to be so considered, her status as a *child* would also have to be viewed in the light of the provisions of § 416(h) (1), which is made expressly applicable in connection with the determination of the status of a *child*. Section 416(h) (1) makes such status dependent on the intestate succession laws of the state of domicile, and under the California (state of domicile here) law, the child of a decedent's spouse by a former marriage, even though accepted into the home, if never legally adopted, has (with one possible exception, not here applicable), no inheritance rights in such decedent's estate.[3] Therefore, it is the opinion of the Court that the decision of the Social Security Administration denying "child's insurance benefits" to Carolene A. Blystone must be affirmed.

2. The term "natural" is used advisedly, for under the regulations the parent may either be the adopting parent (§ 404.1109 (b)) or any person not the adopting parent or stepparent who has the status of parent under the applicable state law (§ 404.1110(c), which is referred to in § 404.1109(b)). However, for the purposes of this case, petitioner, being the natural parent of Carolene A. Blystone, is the parent of Carolene within the meaning of §§ 404.1109(b) and 404.1110 (c).

3. The only provisions in the Probate Code under which children not the lineal descendents of the decedent are treated as children for the purpose of intestate

succession are § 255 (relating to illegitimate children whose paternity is acknowledged by the decedent) and § 257 (relating to legally adopted children of the decedent). No provision is made for "stepchildren", as such, and stepchildren are clearly not considered "issue". See: In re Estate of Auclair, 75 Cal.App.2d 189, 170 P.2d 29.

The possible exception noted in the main text relates to the inheritance rights of children of a predeceased spouse in the estate of the decedent, where such decedent leaves no surviving spouse or issue. See: Probate Code §§ 228 and 229; In re Estate of Underhill, 190 Cal. 233, 211 P. 801; and In re Estate of Marshall, 42 Cal.App. 683, 184 P. 43.

Both counsel have devoted the major portion of their efforts in this case to the question of petitioner's status under § 416(h) (1). Preliminarily, it should be noted that on the basis of the factual record in this case, the Referee correctly concluded that petitioner was the "putative" spouse of Mr. Aubrey at the time of his death (see the requirements for such a relationship as they are set forth in Vallera v. Vallera, 21 Cal.2d 681, 134 P.2d 761). Section 416(h) (1) makes the applicable state intestate succession law determinative of the question of family status, and for the purposes of this case, as has already been noted, petitioner's claim depends upon whether, under the California law of intestate succession, she, as a surviving "putative" spouse, would be treated in such a manner as a surviving legitimate spouse or widow of the deceased wage earner would be treated.

It is respondent's contention that the California courts recognize the putative spouse for *equitable* reasons only, and hence, grant her a share in the estate of the intestate putative spouse as a rule of equity and not as a rule of intestate succession. Since § 416(h) (1) refers to the state law of "devolution of intestate personal property", and not the state law of equity, the Government argues, the putative spouse does not have the status of a wife or widow within the meaning of § 416(h) (1). The Government further contends that even though the surviving putative spouse may be recognized as a "surviving legitimate spouse", under the California law of intestate succession for some purposes, i. e., to the extent that the estate consists of "quasi-community property", she has not yet been considered as having the same rights as a legitimate spouse with respect to the decedent's separate property, and thus, under the California law, does not have the *same* status as a wife or widow, as such status is defined in § 416(h) (1).

Under California Probate Code, § 201, a surviving spouse inherits all of the community property in the estate of the intestate spouse. This section has been expressly held to be applicable to a surviving putative spouse, thus giving the putative spouse a right of *inheritance* (as distinguished from an equitable right) in all of the "quasi-community property" in the estate of the intestate putative spouse (In re Estate of Krone, 83 Cal.App.2d 766, 769–770, 189 P.2d 741, and Mazzenga v. Rosso, 87 Cal.App.2d 790, 197 P.2d 770). In the case of Speedling v. Hobby, D.C.N.D.Cal., 132 F.Supp. 833, the Court held that under In re Estate of Krone, supra, a putative widow satisfied the requirements of § 416(h) (1) where the deceased wage earner left only "quasi-community" property in his estate. The Court expressly left open the question of whether the putative widow would qualify under the provisions of § 416(h) (1) where the deceased wage earner's estate consisted of separate property as well (see: 132 F.Supp. at page 836). This Court has been unable to locate any reported California decisions which have either granted or denied inheritance rights in a decedent's separate property to a surviving putative spouse.[4] The Court does not agree with the respondent's contention that the Speedling case, supra, is inapplicable where the deceased wage earner left separate property in his estate,[5] for even if the surviving putative spouse is not

---

4. The case of Garrado v. Collins, 136 Cal. App.2d 323, 288 P.2d 620, involved an award of separate property to a surviving putative spouse in the trial court, but the District Court of Appeals did not rule on the propriety of such an award in dismissing the appeal on the ground that the appellants were not aggrieved by the lower court judgment. This case appears to be the only one which even remotely bears on the question.

5. The Government has contended that under the Speedling case the surviving putative spouse may only be considered a widow within the meaning of § 416(h) (1) when the deceased wage earner leaves nothing but "quasi-community" property in his estate. In the opinion of the Court the award of benefits under the Social Security Act was never intended to be dependent upon such an unrelated contingency. Even if this were the correct

granted inheritance rights in the decedent's separate property under the California law, the surviving putative spouse may still satisfy the requirements of § 416(h) (1). To adopt the respondent's interpretation of § 416(h) (1), the Court would have to read into that section the requirement that under the applicable state law of devolution of intestate personal property the petitioner would have to have the same status as a widow with respect to *all classes* of the deceased wage earner's intestate property. In the opinion of the Court, such an interpretation is not required, for under the regulations it is sufficient that the applicant *be treated as* a widow (or other relative, as the case may be), although not technically endowed with that status, for the purpose of *sharing* in the deceased wage earner's intestate personal property (Title 20 C.F.R. §§ 404.1101 and 404.1102), and this would imply that if the applicant is treated as standing in a family relationship necessary to qualify for benefits under the Act for *any* purpose under the state law of intestate succession, such applicant would qualify under § 416(h) (1).

It is, therefore, the opinion of this Court that irrespective of the nature of the property in the estate of the deceased wage earner, the surviving "putative" spouse in California qualifies as a widow under the provisions of § 416(h) (1), and thus, in the case at bar, is entitled to "mother's insurance benefits" under § 402(g).

It is, therefore, ordered that petitioner's motion for judgment on the pleadings and the entire present record, insofar as it relates to the eligibility of Irene E. Aubrey for "mother's insurance benefits", be, and it is, hereby granted;

It is further ordered that respondent's motion for summary judgment on the entire present record, insofar as it relates to the ineligibility of Carolene A. Blystone for "child's insurance benefits", be, and it is, hereby granted;

It is further ordered that no relief, other than that hereinabove specifically provided for, be granted to either party by this order;

And it is further ordered that the petitioner prepare and lodge with the Clerk of this Court all documents necessary for the final disposition of this matter pursuant to and in accordance with this order.

---

rule, this case would have to be remanded to the respondent agency for more specific findings on the nature of the property making up Mr. Aubrey's estate. The Referee below made this ambiguous finding: "Though the wage earner left no personal property whatsoever, for the purposes of this case we may assume that he left intestate personal property both separate and community." See: page 3 of the Referee's decision. In the opinion of the Court the record before the Referee was insufficient to warrant any finding as to the nature of the property in Mr. Aubrey's estate.