Lillie T. CARQUEVILLE

v.

Marion B. FOLSOM, Secretary of Health, Education and Welfare.

No. 57 C 1600.

United States District Court
N. D. Illinois.

July 16, 1958.

McCracken & Walsh, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Atty., Charles R. Purcell, Jr., Asst. U. S. Atty., Chicago, Ill., for defendant.

JULIUS J. HOFFMAN, District Judge.

■ This is an action to review a determination by the Secretary of Health, Education and Welfare (hereafter "Secretary") that the plaintiff is not entitled to Widow's Monthly Insurance Benefits under the Social Security Laws of the United States, 42 U.S.C.A. § 301ff. The alleged wage earner, plaintiff's husband, died on August 14, 1946. However, plaintiff did not file an application for benefits until July 3, 1956. This application was disallowed on September 6, 1956, by the Bureau of Old-Age and Survivors Insurance, and plaintiff then requested a hearing before a referee. In February and March of 1957, a hearing was held at which plaintiff was represented by counsel, and plaintiff's claim was rejected by the referee on April 30, 1957. Thereupon, plaintiff attempted to appeal, but plaintiff's request for review was denied by the Appeals Council of the Social Security Administration. As a result of denial of review, the referee's decision became the final decision of the Secretary and is reviewable by this court pursuant to 42 U.S.C.A. § 405(g). Goldman v. Folsom, 3 Cir., 1957, 246 F.2d 776; Jacobson v. Folsom, D.C.S.D.N.Y.1957, 158 F.Supp. 281; Norment v. Hobby, D.C.N.D.Ala., 1953, 124 F.Supp. 489; 20 C.F.R. §§ 403.710(e), 422.6(d) (1949).

■ After the filing of pleadings, both parties moved for summary judgment. Since the defendant's answer incorporates a transcript of the hearings held by the referee, the court now has before it all the matters it would have upon a full trial. Accordingly, the cross-motions for summary judgment are proper. Irvin v. Hobby, D.C.N.D.Iowa 1955, 131 F.Supp. 851; MacPherson v. Ewing, D.C.N.D.Cal., 1952, 107 F.Supp. 666. Further, 42 U.S.C.A. § 405(g) provides in relevant part:

"The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

Scope of Review

■ Although a liberal construction of the Social Security Laws is to be preferred, Carroll v. Social Security Board, 7 Cir., 1942, 128 F.2d 876; Willard v. Hobby, D.C.E.D.Pa., 1955, 134 F. Supp. 66, judicial review of the final decisions of the Secretary is rigidly circumscribed by statute and case law. The instant action is not a trial de novo of plaintiff's claims. Thompson v. Social Security Board, 81 U.S.App.D.C. 27, 1946, 154 F.2d 204; Scalzi v. Folsom, D.C.R.I., 1957, 156 F.Supp. 838. The findings of the Secretary (in this case

the referee) as to any fact, if supported by substantial evidence, are conclusive and binding on this court. 42 U.S.C.A. § 405(g); Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724; Teder v. Hobby, 7 Cir., 1956, 230 F.2d 385. Similarly, inferences drawn by the referee and conclusions made by him, for which there is a substantial basis, are conclusive and binding. Folsom v. O'Neal, 10 Cir., 1957, 250 F.2d 946; Livingstone v. Folsom, 3 Cir., 1956, 234 F.2d 75; United States v. LaLone, 9 Cir., 1945, 152 F.2d 43; Murray v. Folsom, D.C.1957, 147 F. Supp. 298. As stated in Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724, at page 728:

> "In any event, we think the Referee as trier of fact, invested with the function of evaluating the evidence and drawing inferences therefrom, was justified in concluding that plaintiff had failed to show that the wage earner had left Illinois prior to September 11, 1940, and that the evidence failed to establish exactly when he did leave the state. We cannot make our own appraisal of the evidence. Section 205 (g) of the Act expressly makes the Secretary's finding conclusive if supported by substantial evidence (citing case). Of course, the finality accorded by Section 205(g) to the Administrative findings extends as well to the inferences from the evidence made by the Secretary if a substantial basis for them appears in the record. * * * "

Substantial evidence is evidence which affords

> " * * * a substantial basis of fact from which the fact in issue can be reasonably inferred. * * * Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. 'It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' * * *, and it must be enough to justify, if the trial were to a jury,

a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury. * * * " National Labor Relations Board v. Columbian Enameling & Stamping Co., 1939, 306 U.S. 292, 299–300, 59 S.Ct. 501, 505, 83 L.Ed. 660.

See also, Morand Bros. Beverage Co. v. National Labor Relations Board, 7 Cir., 1953, 204 F.2d 529, 534, certiorari denied, 1953, 346 U.S. 909, 74 S.Ct. 241, 98 L.Ed. 407; McGrew v. Hobby, D.C. Kan., 1955, 129 F.Supp. 627; Rambin v. Ewing, D.C.W.D.La., 1952, 106 F. Supp. 268.

■ With reference to questions of law and statutory construction, this court may inquire as to whether the Secretary correctly interpreted the law and applied it to the facts. Fuller v. Folsom, D.C.W.D.Ark., 1957, 155 F. Supp. 348; Aubrey v. Folsom, D.C.N.D. Cal., 1957, 151 F.Supp. 836. However, the Secretary's determination is entitled to great weight. Rosewall v. Folsom, 7 Cir., 1957, 239 F.2d 724; Bostick v. Folsom, D.C.W.D.Ark., 1957, 157 F. Supp. 108.

Merits of Plaintiff's Claim

■■ A determination as to whether there is merit to plaintiff's claim that the findings of the referee are not supported by substantial evidence must be made in the light of certain procedural considerations. Plaintiff bore the burden of proof before the referee to establish that the required conditions for eligibility had been met. Jacobson v. Folsom, D.C.S.D.N.Y., 1957, 158 F.Supp. 281; Norment v. Hobby, D.C.N.D.Ala., 1953, 124 F.Supp. 489. In addition, 42 U.S.C.A. § 405(c) (2) provides that the Secretary shall establish and maintain records of amounts of wages paid to each wage earner and of the period in which such wages were paid. With reference to the evidentiary effect of such records, § 405(c) (3) provides that the records shall be evidence of the amount of wages paid and of the period in which such wages were paid. The absence of an entry as to wages shall be evidence that

no wages were paid to the individual. Further, § 405(c) (4) (B) provides that after the expiration of 3 years, 3 months and 15 days following any year, the absence of an entry in the Secretary's records as to wages paid shall be *presumptive* evidence that no wages were paid during that period. The facts of this case bring it within the scope of § 405 (c) (4) (B) since it is undisputed that the Secretary's records disclose no entry of wages paid to plaintiff's husband for the period in question which ended in 1946. Consequently, in the hearing before the referee, plaintiff bore, not only the usual burden of proof but also the burden of overcoming the presumption that wages were not paid to her husband.

■ The undisputed facts giving rise to plaintiff's claim are as follows: Plaintiff's husband was a commercial artist who attained the age of 65 on June 16, 1935. In 1937, he entered into a business arrangement with the General Outdoor Advertising Company (hereafter "General"). Pursuant to this arrangement, he worked at home, made drawings and submitted them to General. Although this relationship continued until 1939, it did not result in social security coverage because, under the then existing law, coverage was not afforded to individuals who had already attained the age of 65. Social Security Act of 1935, § 811(b) (4), 49 Stat. 636 (1935). In 1939, the plaintiff's husband contracted a serious disease. Whether he thereafter made drawings for General is disputed and will be discussed later. However, it is undisputed that from March 15, 1939 until August 14, 1946, the date on which plaintiff's husband died, he received semi-monthly checks from General in the amount of $86.90 less certain deductions. These deductions were probably made for income tax purposes. They were not made pursuant to the Social Security Act. Indeed, plaintiff's husband apparently never applied for, and certainly was never issued a social security card.

With these facts in mind, consideration must next be given to the statutes which govern this case. 42 U.S.C.A. § 402(e) confers social security benefits upon the widow of " * * * an individual who died a fully insured individual after 1939 * * *." Section 414(a), in relevant part, defines a "fully insured individual" as one who has " * * * at least six quarters of coverage." Section 413(a), in relevant part, defines "quarters of coverage" as a period of three calendar months ending on March 31, June 30, September 30, or December 31, in which an individual is paid $50 or more in wages. Section 409 defines wages as " * * * remuneration paid prior to 1951 which was wages for the purposes of this subchapter under the law applicable to the payment of such remuneration * * *." Section 210(a) of the Social Security Act of 1935, 49 Stat. 625, defined wages as " * * * all remuneration for employment * * *." Section 210(b) of the same Act defined employment as " * * * any service, of whatever nature, performed within the United States by an employee for his employer * * *." Although, as has already been noted, plaintiff's husband was not covered by the original Act, the possibility of coverage, beginning on January 1, 1939, was afforded him by § 209(b) of the Social Security Act Amendments of 1939, effective January 1, 1940, 53 Stat. 1373, which provided:

" * * * the term 'employment' means any service performed after December 31, 1936, and prior to January 1, 1940, which was employment as defined in section 210(b) of the Social Security Act prior to January 1, 1940 (except service performed by an individual after he attained the age of sixty-five *if performed prior to January 1, 1939*), and any service, of whatever nature, performed after December 31, 1939, by an employee for the person employing him * * *." (Emphasis added.)

Section 209(a) of the same amending Act defined the term "wages" as " * * * all remuneration for employment."

It is clear from an examination of the above statutes that the crucial term is "employment". That term, under the Act of 1935 and the amendments of 1939, comprises two elements: (1) services, and (2) performance by an *employee*. If either of these elements is lacking, either as a matter of fact or as a matter of law, the plaintiff cannot prevail. The term "service" is not defined in the original Act or subsequent amendments. The term "employee" was defined in § 1101 (a)(6) of the original Act, 49 Stat. 647, as follows:

"The term 'employee' includes an officer of a corporation."

The Social Security Act Amendments of 1948, 62 Stat. 438,* added to the above definition the following:

" * * * but such term does not include (1) any individual who, under the usual common-law rules applicable in determining the employer-employee relationship, has the status of an independent contractor or (2) any individual (except an officer of a corporation) who is not an employee under such common-law rules."

The 1948 amendment further provided, with exceptions not material here, that the definition of "employee" was to be given retroactive effect as if included in the original Act of 1935.

Applicable departmental regulations, 20 C.F.R. § 404.1004(c) (Supp.1958) and § 403.804 (1949), also define the term "employee." This administrative definition, in relevant part, has remained substantially unchanged since the inception of the Act of 1935 (compare the regulations cited above with Article 3, Regulation 91, reprinted in 2 U.S.Code Congr. Service 1755 (1948) and with 20 C.F.R. § 402.3 (1940). The administrative definition is as follows:

"*Who are employees.* (a) Every individual is an employee if the relationship between him and the person for whom he performs services is the legal relationship of employer and employee.

"(b) Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished. That is, an employee is subject to the will and control of the employer not only as to what shall be done but how it shall be done. In this connection, it is not necessary that the employer actually direct or control the manner in which the services are performed; it is sufficient if he has the right to do so. The right to discharge is also an important factor indicating that the person possessing that right is an employer. Other factors characteristic of an employer, but not necessarily present in every case, are the furnishing of tools and the furnishing of a place to work to the individual who performs the services. In general, if an individual is subject to the control or direction of another merely as to the result to be accomplished by the work and not as to the means and methods for accomplishing the result, he is an independent contractor. An individual performing services as an independent contractor is not as to such services an employee."

This administrative definition is in accord with the generally accepted judicial definition of the employment relationship. See, for example, Williams v. United States, 7 Cir., 1942, 126 F.2d 129, 132, certiorari denied 1942, 317 U.S. 655, 63 S.Ct. 52, 87 L.Ed. 527.

It is in the light of the above mentioned statutes, regulations and presumptions that the transcript of the referee's hearing must be considered. The question which the referee had to resolve was whether the plaintiff's husband was an

* Now 26 U.S.C.A. § 3306(i).

employee of General for six quarters of the period in which he received semi-monthly checks. At the hearing, the referee received both documentary and testimonial evidence. A summary of the documentary evidence follows. Plaintiff's application for benefits discloses this statement by plaintiff:

"My husband rendered no services for the company for approximately 7 years prior to his death; however, the company continued to make payments to him up to his death."

An application for a social security account number in the name of plaintiff's husband was made by *plaintiff* on July 3, 1956. Social security wage records maintained by the Secretary show that no wages were posted to the credit of plaintiff's husband during the period in question. In a statement executed on July 26, 1956, Mr. George Tresmer asserted:

"I the undersigned worked with Mr. Will Carqueville for a period of four (4) years at the home office of General Outdoor Advertising Company, Chicago.

"I was transferred to another branch in the meantime, while Will Carqueville continued working at the Chicago office of said company until his illness."

In a statement executed on July 26, 1956, Mr. Richard A. Chase averred:

"* * * Wm. L. Carqueville worked for General Outdoor Advertising Co.

"I visited his studio and saw work he was doing for them at that time."

A statement from plaintiff's attorney to the Social Security Administration reveals that the attorney was informed by an employee of General's personnel department that plaintiff's husband was "* * * in a free-lance status rather than an employee status" during the period of his association with General. Finally, payroll records maintained by General disclose that, from March 15, 1939 through December 31, 1942, plain-tiff's husband received $86.90 semi-monthly from General. From January 15, 1943 to the date of his death he received semi-monthly payments of the same amount less a small deduction listed under the heading "UN. INS." The plaintiff argues vigorously that the deduction was, in fact, for withholding tax, and the defendant concedes the validity of this argument. The payroll cards, however, disclose no entries under the headings "Position", "Date Employed", and "Time Worked". Nor are there any entries for social security deductions.

The only testimony received at the hearing was given by plaintiff and Mr. Frank Boyle. Plaintiff testified in substance that her husband was a highly regarded commercial artist and "idea man;" that he worked for the Throop Advertising Company for 22 years; that, upon Throop's going out of business, he entered into an arrangement with General; that he worked for General for about 5–6 years prior to 1939; that he got a weekly salary of $125–175; that during the period 1939–1946, he suffered from Parkinson's disease, could not raise his arms and was helpless for the last two years of his life; that he was physically unable to visit General's offices downtown in Chicago; and that the semi-monthly payments were not for ideas developed by him.

Mr. Boyle, the manager of General's tax department since 1934, testified as a witness for the plaintiff, but his testimony contradicted her testimony in several important respects. He testified that prior to 1939, Mr. Carqueville was paid for drawings as he made them; that he made the drawings at home, brought them to General's office and was paid for them there; that he was not paid by a payroll check but by a regular accounts payable voucher check. The witness characterized Mr. Carqueville's work as "self employment." He testified further that from 1939 to 1946, Mr. Carqueville received semi-monthly payments of $86.90; that these payments were made at the direction of General's president; that during the period in

question, Mr. Carqueville was at General's offices "at times" but not regularly; that General did not have an established plan for compensating sick employees; and that the semi-monthly payments were made by payroll checks and from company funds. When asked what the payments represented, Mr. Boyle replied:

"I can't say actually that I know. But I think that they were made because he was an old artist in the Outdoor Advertising business and couldn't work at it any more, and they took this means of giving him some money and keeping him busy. He came down to the office, gave information to younger artists and helped around there some." (Tr. 39.)

In addition, he testified that none of General's present employees knows why the payments were made; that General did not report the payments to the Social Security Administration because the witness, himself, decided that the payments were not wages; and that this decision was based on the fact that Mr. Carqueville was not, during the period of the payments, working for General. However, the witness also stated that the payments were taken as a deduction from General's income taxes. Finally, in answer to an extremely leading question by the referee, the witness expressed the opinion that the payments were a gift.

Based on the above mentioned statutory presumptions and definitions and on the documentary and testimonial evidence before him, the referee made findings and conclusions. In substance, he found that the alleged wage earner was sixty-five on June 16, 1935; that plaintiff admitted that her husband had not rendered services to the alleged employer for seven years prior to his death; that plaintiff nevertheless asserted that her husband was an employee of General; that this assertion was not supported by the statements of Tresmer and Chase because those statements did not indicate

when Mr. Carqueville worked for General, the amount of compensation he was paid, and whether he rendered services as an employee or an independent contractor. The referee noted that the records maintained by the Secretary showed no posting of wages to Mr. Carqueville's account; and that an employee of General informed plaintiff's counsel that Mr. Carqueville was in a "free-lance status." Finally, the referee emphasized the testimony of Mr. Boyle that Mr. Carqueville did not render services to General during the period 1939–1946; that an employment relationship did not exist; and that the payments constituted a gift.

The referee concluded that Mr. Carqueville had no quarters of coverage and was not fully insured; that payments received prior to 1939 were not "wages" under the then existing law; and that an employment relationship did not exist between Mr. Carqueville and General. This last conclusion was based on the following reasons: that neither Mr. Carqueville nor General believed that such relationship existed; that Mr. Carqueville never applied for a social security card; that General never reported the amounts paid to the Social Security Administration; that, according to plaintiff's own statement, her husband did not render services to General during the period in question; that Boyle testified that the relationship did not exist; that the Secretary's records disclosed no posting of wages to Mr. Carqueville's account; and that General's payroll records failed to indicate the time worked, and showed no deductions for social security tax and unemployment insurance. The referee further concluded that the statutory presumption contained in 42 U.S. C.A. § 405(c)(4)(B) was not overcome, and that Mr. Carqueville was not paid "wages" within the meaning of the Social Security Act.

These findings and conclusions are binding upon this court if supported by substantial evidence.[1] Having consid-

1. The existence of an employer-employee relationship has generally been treated as a question of fact within the "substantial evidence" rule. Rhoads v. Folsom,

ered the record in its entirety, I am of the opinion that the referee's findings are supported by substantial evidence, as that term has been judicially defined; that there is a substantial basis for the inferences drawn and the conclusions made by him; and that he correctly applied the law to the facts. On the record, the referee could properly find that no employer-employee relationship ever existed between Mr. Carqueville and General; that no services were performed by Mr. Carqueville during the period 1939–1946; and that Mr. Carqueville received no wages from General during or before this period.

Plaintiff does not assert that she was not accorded a fair hearing. However, she advances several arguments to support the contention that substantial evidence is lacking in this case. First, plaintiff asserts that Boyle's testimony lacks probative value. It is argued that, although Boyle testified that Mr. Carqueville was not an employee, it was he who made the original determination, and he would be reluctant to deviate from it. It is further argued that, although Boyle testified that the payments were a gift, he contradicted himself by the statement that General deducted the payments for income tax purposes. These arguments are directed to the weight of Boyle's testimony. It was for the referee to evaluate the credibility of the witness and the weight of his testimony. It cannot be said as a matter of law either that the testimony was inadmissible or that it was entitled to no weight.

Next, plaintiff argues that the existence of an employment relationship is indicated by the facts that payment during 1939–1946 was made by payroll check; that the payroll cards noted Mr.

Carqueville's marital status; and that withholding tax was deducted from the amounts paid. In substance, plaintiff asks the court to emphasize certain facts not emphasized by the referee and to draw from them inferences which are contrary to the supportable inferences drawn by the referee. Such action is prohibited by the numerous cases which delimit the scope of judicial review of the Secretary's determinations.

Plaintiff incorrectly asserts that the referee ignored the statements of Tresmer and Chase. In fact, the referee considered them. However, he was not impressed with their probative value and accorded them little weight. It cannot be argued that, as a matter of law, the referee erred.

Plaintiff asserts that the referee ignored the testimony of Boyle that Mr. Carqueville rendered some services to General after he became ill. Conflicting testimony was presented on this question. The referee chose to believe the plaintiff's testimony that her husband rendered no services for seven years. Again, it cannot be argued that, as a matter of law, the referee erred.

Plaintiff asserts that, assuming that no services were rendered during the period 1939–1946, the payments made to Mr. Carqueville were still wages. Plaintiff relies upon MacPherson v. Ewing, D.C. N.D.Cal., 1952, 107 F.Supp. 666. In that case, the alleged wage earner received payments during an eight-month period when he was confined to his home by illness. The Social Security Administration found that the payments were "generosity pay" and coverage was denied. In reversing this determination, the court stated, 107 F.Supp. at page 667:

7 Cir., 1958, 252 F.2d 377; Folsom v. O'Neal, 10 Cir., 1957, 250 F.2d 946; Murray v. Folsom, D.C., 1957, 147 F.Supp. 298; McGrew v. Hobby, D.C.Kan., 1955, 129 F.Supp. 627. It has also been treated as a mixed question of law and fact. United States v. LaLone, 9 Cir., 1945, 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 1944, 142 F.2d 974. In one unusual case it was treated as a

question of law. Carroll v. Social Security Board, 7 Cir., 1942, 128 F.2d 876 (Plaintiff was clearly an employee rather than an independent contractor. The court treated as a matter of law the question whether he was an employee of a bank or of the State). See also, Ayers v. Hobby, D.C.Va.1954, 123 F. Supp. 115.

"Whatever may have been the motives of the employer, whether prompted by generosity or selfishness, they are immaterial in determining the nature of the payments. \* \* \* To permit the Administrator to rest decision upon the *motives* of the employer or upon the *effectiveness* or *adequacy* of the employee's services or labor, absent any element of fraud or deceit, would be to entrust to him a power far beyond that statutorily conferred upon him." (citing no authorities.)

However, the MacPherson case is distinguishable on its facts from the case at bar. At page 667 of 107 F.Supp. it was noted:

"The record, without dispute, shows that the relation of employer and employee existed."

In the case at bar, the record supports the opposite conclusion made by the referee. The MacPherson decision stands for the proposition that if an employment relationship is shown to exist, payments made to an employee during a period of illness may still constitute wages. Even if this proposition is valid, it cannot be applied to the instant action.

Finally, plaintiff asserts the insufficiency of certain facts relied upon by the referee in support of his conclusion that an employment relationship did not exist. These facts are the failure of General to report payments made to Mr. Carqueville, and the latter's failure to apply for a social security card. It may be true that the first of these facts is entitled to little, if any, probative value. Rhoads v. Folsom, 7 Cir., 1958, 252 F.2d 377, 379. However, it does not appear that either of these facts was a sole or even an important basis for the referee's decision. The record, taken as a whole, contains substantial evidence to support the referee's findings, and a reading of the record clearly demonstrates that plaintiff failed to sustain the burden of proof. Accordingly, entry of judgment is directed affirming the final decision of the Secretary. Plaintiff will bear the costs of this action.