Laura S. RHODES

v.

Arthur S. FLEMMING, Secretary of Health, Education and Welfare.

Civ. No. 10771.

United States District Court
D. Maryland.

Feb. 9, 1960.

K. Thomas Everngam, Denton, Md., for plaintiff.

Leon H. A. Pierson, U. S. Atty., and John Gordon Underwood, Asst. U. S. Atty., Baltimore, Md., for defendant.

THOMSEN, Chief Judge.

This action is brought under sec. 205 (g) of the Social Security Act, 42 U.S. C.A. § 405(g), to secure judicial review of a referee's decision[1] that claimant was not entitled to old-age insurance benefits because she did not have the seven quarters of coverage required in her case for a fully insured status. The issue is whether payments made to claimant during the years 1951–53 by Tilghman Rhodes, Trustee of the estate of Lonie Rhodes, Incompetent, for maintenance and care of her mother, the said Lonie Rhodes, were either (a) wages or (b) self-employment income, within the meaning of the Act.

### The Statute

For the purposes of this case the term "wages" means "remuneration paid * * * for employment". 42 U.S.C.A. § 409. The term "employment" means "any service, of whatever nature, performed after 1950 * * * by an employee for the person employing him", 42 U.S.C.A. § 410(a), with certain exceptions not applicable here, among which is "service performed by an in-

---

1. Which became the Secretary's final decision when the Appeals Council denied claimant's request for review. 42 U.S. C.A. § 405(h).

dividual in the employ of his son, daughter, or spouse, and service performed by a child under the age of twenty-one in the employ of his father or mother". 42 U.S.C.A. § 410(a) (3). The term "employee" means "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee". 42 U.S.C.A. § 410(k) (2).

For the purposes of this case, "self-employment income" may be derived by an individual "from any trade or business carried on by such individual". 42 U.S.C.A. § 411(a) and 411(b). The term "trade or business" as used in sec. 411 has the same meaning as when used in sec. 23 of the Internal Revenue Code of 1939, 26 U.S.C.A. § 23, as amended, now sec. 162 of the I.R.C. of 1954, 26 U.S.C.A. § 162. See 42 U.S.C.A. § 411 (c).

## Facts

The following facts were either found by the referee or appear in the record undisputed.

In the spring of 1951 claimant's mother, Lonie Rhodes, age 89, who had been living in her own home in Centreville, Queen Anne's County, Maryland, became ill, mentally disturbed and unable to care for herself. She had nine children, and one of the sons, Tilghman Rhodes, took her into his home for a short period, but concluded that because of the illness of his wife he could not maintain her there. He tried to place his mother in a home for the aged at its usual rate of $35 a week, but when the operators of the home learned of her condition, they refused to take her.

Tilghman Rhodes then suggested to claimant that she take their mother into her home in Caroline County, Maryland, "at a rate of $25 per week". At first claimant was hesitant, but after ten days agreed to keep her mother for the stipulated price. Other members of the household were claimant's husband, Norman Rhodes, and their three sons. From May 1951 until the death of Lonie Rhodes in November 1953, with consid-erable assistance and time out for rest, claimant supplied board and lodging and did the cooking, washing and nursing necessary to care for her mother, who had various physical disabilities, and was so mentally disturbed that the windows in her room had to be nailed shut.

In July 1951 Lonie Rhodes was declared legally incompetent by the Circuit Court for Queen Anne's County, and Tilghman Rhodes was appointed trustee of her estate. In August 1951 he was authorized by that Court to "expend the corpus of this trust estate in an amount not to exceed $125 per month for the support and maintenance of the said Incompetent". The trustee paid claimant $100 every four weeks, and duly accounted to the court for the payments. He also paid the doctor's bills and small amounts for clothing and the like. The other children sent food, little things their mother wanted, or money to purchase them. Claimant's sister relieved her from time to time, so that she could rest, once for as much as four weeks. One of her sisters gave up a job in Baltimore to help claimant care for their mother. Tilghman Rhodes, who lived some 24 miles away, visited his mother frequently, but did not exercise any control or supervision over the care which claimant gave their mother, beyond specifying certain kinds of food he wanted her to have.

Tax returns showing the payments to claimant by the trustee were filed in 1955, and the tax was paid. Claimant and her husband testified that the returns were not filed earlier because, in 1951, they had gone to Denton, the county seat of Caroline County, and talked to a representative of the Social Security Administration, who told them that claimant would not be covered. Again, in 1955, she talked to the same representative, explained that her brother had been appointed trustee and had employed her to take care of her mother, and asked him if she was entitled to Social Security. This time he said that she could, but that her brother would have to pay the tax. The referee made no findings

with respect to these conversations, but they are not disputed by defendant.

When claimant filed her application for old-age insurance benefits, it was denied. She requested reconsideration, and both she and her brother gave sworn statements to the Social Security Administration. He said, inter alia, that there was no employer-employee relationship between them, and she agreed that his statement was true. She also said that she was employed by him to look after her mother, but that he did not exercise any detailed control and direction as to what she should do.

The referee heard testimony from claimant, her husband and her brother, and, filed his decision, in which, after reviewing the proceedings and the evidence, he said: "It is clear from the testimony that the claimant did the work of caring for her mother, which at times was arduous and difficult, and it is clear that she was paid out of her mother's funds for that service."

He continued: "The referee has carefully considered the foregoing evidence, and all of the other evidence in this case, and believes that he must find from that evidence, that the claimant at no time became the employee within the meaning of the Social Security Act, of her brother Tilghman Rhodes, either individually, or as trustee of the Estate of Lonie Rhodes. The arrangement between the claimant and her brother, in the opinion of the referee, was no different than an arrangement which would have been made between Tilghman Rhodes and any home for the aged, in which he might have placed his mother. The transaction was as suggested by the parties, a business arrangement whereby in exchange for maintaining the mother, the daughter was to receive a stipulated sum of money for that work. The estimate was that the actual cost of maintenance was not more than $5 a week, and that the balance of $20, was considered to be remuneration for services rendered. The mere fact that the claimant performed service, and received remuneration for that service, does not, in the opinion of the referee, result in an employment relationship. It seems clear that as to such service, the claimant was clearly in the position of an independent operator. There was no reservation of right to control the manner in which the work was performed, or to reserve the right to supervise details of the work.

"The more serious question in this case as to the work relationship between the claimant and her brother, was whether or not it was such self-employment as could be the basis for crediting the claimant's account with self-employment income. The evidence shows that the claimant was paid $831.90 in the year 1951, $1300 in the year 1952, and $1100 in the year 1953. Those sums can be credited to her account as self-employment income, less expense, if it was received in the operation of a trade or business. The facts in this case show that the claimant was not, in fact, operating a nursing home, nor did she hold herself out to the public as being in the business or occupation of caring for the aged. It seems clear to the referee that the reason for the acceptance of Lonie Rhodes into the claimant's home, was not only because of the money offered, but because the individual involved was her own mother. The evidence is clear that at no time, before or after the arrangement dealing with her mother, did the claimant undertake the care of anyone else. The referee finds the conclusion inescapable that the claimant was not in a trade or business as that term is used in the Internal Revenue Code. * * * She therefore was not fully insured when she filed her application."

Claimant's request for review of the referee's decision was denied by the Appeals Council.

### Discussion

 The findings of the referee have become the findings of the Secretary in this case. His findings as to any fact, if supported by substantial evidence, are conclusive, 42 U.S.C.A. § 405 (g); 5 U.S.C.A. § 1001 et seq. A dis-

trict court may not substitute its inferences for the inferences of the referee which are supported by substantial evidence. Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718; Gray v. Powell, 314 U.S. 402, 62 S.Ct. 326, 86 L.Ed. 301; Walker v. Altmeyer, 2 Cir., 137 F.2d 531; Hobby v. Hodges, 10 Cir., 215 F.2d 754; United States v. LaLone, 9 Cir., 152 F.2d 43; Social Security Board v. Warren, 8 Cir., 142 F.2d 974; Holland v. Altmeyer, D.C. Minn., 60 F.Supp. 954; Mullowney v. Hobby, D.C.Neb., 134 F.Supp. 419; Irvin v. Hobby, D.C.N.D.Iowa, 131 F.Supp. 851. On the other hand, "courts must now assume more responsibility for the reasonableness and fairness" of decisions of federal agencies "than some courts have shown in the past" and "reviewing courts must be influenced by a feeling that they are not to abdicate the conventional judicial function." Universal Camera Corp. v. N. L. R. B., 340 U.S. 474, 490, 71 S.Ct. 456, 466, 95 L.Ed. 456. Where the administrative decision is based upon conclusions not reasonably reached from the facts, the court may properly correct the errors. Ayers v. Hobby, D.C.W.D.Va., 123 F.Supp. 115; Jacobson v. Folsom, D.C.S.D.N.Y., 158 F.Supp. 281, 284; Willard v. Hobby, D. C.E.D.Pa., 134 F.Supp. 66. For examples of the difficulties involved, see the various majority, concurring and dissenting opinions in three Third Circuit cases: Ferenz v. Folsom, 237 F.2d 46; Goldman v. Folsom, 246 F.2d 776, and Boyd v. Folsom, 257 F.2d 778.

This is not the typical family case, where people who have been living together in an ordinary family relationship claim that the relationship was changed to something else. Thurston v. Hobby, D.C.W.D.Mo., 133 F.Supp. 205; Irvin v. Hobby, D.C.N.D.Iowa, 131 F. Supp. 851; McGrew v. Hobby, D.C. Kan., 129 F.Supp. 627; Norment v. Hobby, D.C.N.D.Ala., 124 F.Supp. 489. Cf. Willard v. Hobby, D.C.E.D.Pa., 134 F.Supp. 66; O'Brien v. Flemming, D.C. S.D.Ill., 178 F.Supp. 387. We are not dealing with an alleged agreement made between two people who had been living together, nor with an alleged agreement made between a daughter and her mother. The agreement in this case was made by a trustee, an officer of the court, acting under a court order to expend money for the support and maintenance of his ward. As the referee found, it was "a business arrangement whereby in exchange for maintaining the mother, the daughter was to receive a stipulated sum of money for that work".

As we have seen, the Act defines "employee" to mean "any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." 42 U.S.C.A. § 410(k) (2). Social Security Regulations No. 4, 20 C.F.R. 404.1004(c) (2) states: "Generally such relationship exists when the person for whom services are performed has the right to control and direct the individual who performs the services, not only as to the result to be accomplished by the work but also as to the details and means by which that result is accomplished * * *." In the instant case, the trustee did not exercise any control over the details of the work done by claimant, beyond stipulating certain kinds of food he wanted his mother to have, and did not specifically reserve the right of control.

■■ The right to control the manner of doing the work is generally held to be the most important factor in determining whether one acting for another is a servant or an independent contractor. Other matters of fact to be considered are set out in the Restatement of Agency 2d, sec. 220. In this, as in most contested cases, some factors point one way, some another. If I were hearing the case de novo, I would be inclined to decide the case in favor of the claimant on this issue. But I cannot say that there is no substantial evidence in the record to support the referee's finding that claimant was not an employee within the meaning of the Act. There was no understanding between the parties similar to the provision in the

agreement in Ayers v. Hobby, D.C.W.D. Va., 123 F.Supp. 115. There was no breakdown of the $25 paid to claimant, either in the court order or in the agreement between claimant and her brother. The court order provided simply that it was for the support and maintenance of the incompetent.

The referee applied the proper legal test to the facts, and his conclusion that claimant was not an employee must be sustained. The court should not substitute judicial for administrative judgment in doubtful situations.

On the other issue, whether the payments should be treated as self-employment income, this court is controlled by the decision of the Fourth Circuit in Helvering v. Highland, 124 F.2d 556, 561, where Judge Dobie said: "Recently, the Supreme Court had occasion to observe that no Treasury Decision has ever defined or interpreted 'carrying on a business'. See Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 477, 85 L.Ed. 783. Certainly, lack of uniformity in prior court decisions and instability in administrative practice preclude any presumption of Congressional approval of judicial interpretations or administrative practices by reenactment. Cf. Helvering v. Winmill, 305 U.S. 79, 83, 59 S.Ct. 45, 83 L.Ed. 52. 'Business' as first defined by the Supreme Court was said to embrace 'everything about which a person can be employed' and 'which occupies the time, attention, and labor of men for the purpose of a livelihood or profit'. See Flint v. Stone Tracy Co., 220 U.S. 107, 171, 31 S.Ct. 342, 357, 55 L.Ed. 389, quoted with approval in Von Baumbach v. Sargent Land Co., 242 U.S 503–515, 37 S.Ct. 201, 61 L.Ed. 460. More recently the term has been redefined by that Court and narrowed so that 'carrying on any trade or business' is now said to mean 'holding one's self out to others as engaged in the selling of goods or services'. See Deputy v. DuPont, 308 U.S. 488, 499, 60 S.Ct. 363, 369, 84 L.Ed. 416, quoted with approval in Helvering v. Wilmington Trust Co., 3 Cir., 124 F.2d 156; cf. Higgins v. Commissioner, 312 U.S. 212, 61 S.Ct. 475, 85 L.Ed. 783."

Certainly, claimant did not hold herself out generally as engaged in the selling of services. It may be argued that she did hold herself out to her brother as willing to sell her services in this particular instance, but there was abundant evidence to justify the finding of the referee that she accepted her mother into her home not only because of the money offered, but because of the duty she owed her mother. The other sisters helped out with the nursing from time to time, to enable the plaintiff to have some rest; one of them even gave up her job to help, and there is no evidence of any suggestion that they should be paid anything for their services.

The decision of the referee on this point was justified, in view of the provisions of 42 U.S.C.A. § 411(c), and the importance of restricting the deductions allowed under 26 U.S.C.A. § 162 to those incurred in carrying on a bona fide trade or business.

The decision of the Secretary is hereby affirmed.